THOMAS SNELL *et al.*

*v.*

WILLIAM COTTINGHAM *et al.*

72   161
44a 325
44a 514
72   161
62a 640
72   161
64a 129
72   161
72a 150

1. PRACTICE—*when right to assign error for sustaining a demurrer is waived.* When a demurrer is sustained to a special plea, and the defendant afterwards asks and obtains leave of the court to file a notice, under the statute, of special defenses, which notice, in substance, contains the same matter and things as were contained in the plea, it seems this would be a waiver of the right to assign as error the decision of the court sustaining the demurrer.

2. CONTRACT—*construction*—*in respect to a contract to construct a railroad.* A contract for grading and laying the track of a railroad, provided that the track was to be laid with a good even surface; that the contractor should fill in after the track was laid with earth from the nearest point on the side of the track, and to do all necessary grading to finish the road, to be measured in the earth work aforesaid, and that the contractor should receive twenty cents per cubic yard for earth work done under the contract: *Held,* that the work of filling in between the ties with earth, after the track was laid, should be taken and measured as earth work, to be paid for at the rate of twenty cents per cubic yard, and was not embraced in the work of laying the track.

3. A contract was entered into between a contractor and a railroad company, by which the contractor undertook to grade the road at a certain price per cubic yard for the earth work, and a certain price per mile for laying the track, the track to be laid with a good even surface. A portion of the track had previously been graded, and, at the solicitation of the company, the contractor laid the track on the old graded work in the winter time, when it was impossible to do the grading that should have been done, but afterwards graded it properly, filling in and raising the track two and a half feet: *Held,* that it was immaterial whether this grading was done before or after the track was laid; it was none the less grading, and should be paid for, as such, at the agreed price per cubic yard.

4. EVIDENCE—*must be received even if unsatisfactory, and acted upon, when there is no other.* When grading is done for a railroad company upon a road that has already been partially graded, and the only evidence before the jury as to the amount of the new grading is the estimates made by the engineer of the contractor, and the company refuses to have any estimate made by its engineer, and offers no evidence on the subject, the jury must be guided by the evidence before them, and the fact that it may be difficult for the engineer to distinguish between the old work and the new, can not be ground for disregarding his testimony. If the company fails to produce any testimony on the subject, and the jury are compelled to act on that offered by the contractor alone, although unreliable, it is the result of its own neglect, against which no relief can be had.

5. MEASURE OF DAMAGES—*for failure to complete a railroad by the time fixed in the contract.* The measure of damages upon the failure of a contractor to finish a railroad within the time fixed by the contract, is the value of the use of the road from the time it should have been completed, under the contract, to the time when it is in fact completed.

6. SAME—*not affected by contracts between other parties.* A contractor who fails to finish a railroad by the time limited in his contract, can not be held for the loss occasioned to the owner of the road by reason of another contract between him and a third party, for the use of the road

after the time it should have been completed, even though he may have known of the existence and the terms of such other contract at the time of entering into his own, unless he expressly agrees to such a rule of damages.

7. The private agreement between a railroad company and a third party, for the use of the company's road, provided it is finished by a given time, is not competent evidence as to the value of the use of the road, as against a contractor, in a suit for damages occasioned by his failure to finish the road by the time fixed in his contract.

8. DAMAGES—*for failure to perform contract, may be recouped, although the performance at a fixed time has been waived.* Where a contractor fails to perform his contract within the time fixed for its performance, the other party may permit him to go on after the time limited, and finish the work, and then accept it, without waiving anything, except the performance on the day fixed. In such case, the contractor could recover for his work on the *quantum meruit*, and the other party would have the right to insist upon and recoup such damages as he may have sustained by reason of the non-compliance with the contract.

9. VARIANCE — *whether ground for arrest of judgment, or only for new trial.* A variance between the allegations in the declaration and the proofs, may constitute cause for a new trial, but it seems it can not be considered on a motion in arrest of judgment.

APPEAL from the Circuit Court of DeWitt county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, and Mr. LEONARD SWETT, for the appellants.

Messrs. MOORE & WARNER, Messrs. ROWELL & HAMILTON, and Messrs. STEVENSON & EWING, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Appellees, by a written contract, obligated themselves to build the Lafayette, Bloomington and Mississippi Railroad from the Illinois Central Railroad, at Bloomington, east to the Indiana State line. The work was to be commenced in 10 days after notice, and to be completed in 130 days thereafter.

Appellants, for whom the road was to be constructed, agreed to furnish engines and cars sufficient for the transpor-

tation and hauling of material in the performance of the work ; to furnish material sufficient to lay twenty miles of track per month ; to furnish a sufficient number of water tanks. and water to supply the engines. They were to pay appellees $475 per mile for laying the track, and twenty cents per cubic yard for earth work, done under the contract.

The track was to be laid in a good and substantial manner, with a good even surface, acceptable to the engineer of the Toledo, Wabash and Western Railway Company. Appellees agreed to fill in, after the track was laid, with earth, from the nearest point on the side of the track, so as not to injure the road bed, the filling to cover the ties in the center of the road, and slope each way to the bottom of the ties at each end. They were to put upon the work a force sufficient to lay twenty miles of track per month. All expenses for civil engineering were to be paid by appellants, and appellees to do all necessary grading to finish the road, to be measured in the earth work.

Previous to making this contract, the road bed had been graded, and the necessary bridges erected. The work, however. had been imperfectly done, and it required a great deal of additional grading to render it suitable to receive the track.

Within ten days after notice given, the work was commenced at the Illinois Central Railroad. The road was graded, and the track laid from that point to Paxton, a distance of about fifty miles, when winter came on, and no grading could be done.

The time had then elapsed for completing the entire work, but at the earnest solicitation of appellants, for the purpose of insuring the early completion of the work, appellees were induced to lay the track on the old road bed, without further grading, from Paxton to the State line. As soon as it was practicable in the spring, they finished the grading by filling in, and raising the track to a level surface. It was necessary,

in some places, to raise the track after the iron had been laid, as much as two and a half feet.

The engineer made no estimates for grading done east of Paxton, nor allowed anything for filling in, nor for raising or widening grade, nor for anything else except ditching.

Having completed the entire work, as they allege, and the same having been accepted by the engineer of the Toledo, Wabash and Western Railway Company, appellees brought this suit to recover the balance due under the contract for constructing the road. The declaration contains several special counts, in which a full compliance with the contract is averred, except in so far as appellees were prevented by the default and wrongful conduct of appellants, and also the common counts, in the usual form, for work and labor done and performed. The general issue was filed, and notice given, under the statute, of special defenses. On the trial in the court below, the issues were found for appellees, and they recovered, as a part of the verdict, $5292 for "filling in," and $8000 for grading done east of Paxton.

The first point made upon which a reversal of the judgment is claimed is, that the proof does not fit the declaration, and hence it is said the court erred in overruling the motion in arrest of judgment.

Counsel have not pointed out the variance, and we are unable to perceive in what it consists. Such an objection may constitute good cause for a new trial, but we are not aware it can be considered on a motion in arrest of judgment.

It is insisted, in order to make out the case declared on, either under the common or special counts, appellees must prove a performance by them of the contract, subject to the exceptions noted. This is, no doubt, true, and it is the exact question made by the pleadings and the proof. Whether the testimony offered by appellees was sufficient for that purpose, it was the province of the jury to decide.

There is no question the work was not finished within the time agreed on, but in all other respects, a full compliance

with the contract is insisted upon. As a reason for the non-performance of the contract in that particular, it is averred the execution of the work was delayed, mainly by the failure of appellants to furnish a supply of water, and suitable and necessary machinery to enable appellees to work advantageously, as, by the terms of the contract, they had agreed to do. It is also averred, appellees were hindered in the prosecution of the work in other minor matters by the default and neglect of appellants.

On these questions of fact, the evidence is flatly contradictory, and it was most appropriately a case for the consideration of a jury. The testimony offered by appellees tends to show they had sufficient force on the work to lay twenty miles of track a month. The foreman of the track layers, and others, are positive in their statements, they could have laid a mile of track a day had they been furnished with water convenient, the proper number of cars and engines, and other things necessary to the vigorous prosecution of the work.

On the other hand, the evidence tends to show appellants furnished, in apt time, everything they agreed to by the terms of the contract, and that the delay was caused by the unskillfulness and improvident management on the part of appellees. In fact, there is some evidence the road was never completed as required by the contract. But when the evidence is so contradictory, it is the settled rule of law, we must rely on the verdict as determining the controverted facts. Any other rule would dispense with the services of the jury altogether. This we have neither the right nor inclination to do.

It is claimed the judgment should be reversed because appellees recovered $5292 for "back filling," which work, it is insisted, is embraced in the $475 per mile for track laying.

The contract provides, appellees are to "fill in, after the track is laid, with earth;" that the track shall be laid on an "even surface," and that they shall "do all necessary grading

to finish the road, to be measured in the earth work aforesaid."

The question raised is, whether the filling is included in what is called "surfacing," or whether it is to be measured as "earth work," for which appellees were to receive twenty cents per cubic yard.

The word "surfacing" seems to be a technical term among civil engineers, and the definitions given of its meaning are as contradictory as any other part of the evidence. A witness for appellees says, "surfacing, in railroad parlance, is lifting up the ties and tamping dirt under them, so as to give an evenness to the entire track." The definition given by a witness for appellants is, "Surfacing a railroad is filling in between the ties, and tamping under."

We do not think the theory of appellants, that "filling in" is included in "surfacing," if that word means what their witnesses say it does, and is to be compensated by the consideration to be paid for laying the track, can be maintained, certainly not in view of the provisions of the contract. The track was to be laid with a "good even surface." This is all that is said on that subject. This, we understand from the evidence, can be done without filling in between the ties, and indeed has no necessary connection with it. We think this must have been the understanding of the parties, for in the third paragraph it is provided appellees shall "fill in, after the track is laid, with earth, from the nearest point on the side of the track," and in the last paragraph, appellees agreed "to do all necessary grading to finish the road, to be measured in the earth work aforesaid." The earth work previously provided for, in part at least, was, filling in between the ties. These several provisions must be read and construed together in order to arrive at a clear understanding of the contract. When that is done, it seems to us, the only construction that can consistently be given to it is, that all earth work, whether it consists of grading, ditching, or filling in between the ties, is to be taken and measured as "earth work," to be paid for

at the rate of twenty cents per cubic yard. The act of tamping dirt under the ties, so as to produce an entire even surface, is included, no doubt, in track laying, and no other compensation could be recovered for it. But filling in between the ties is a very different thing. It was for this latter class of work the recovery was had, and we can not say it was not warranted by the evidence.

There ought to be no controversy, that appellees are entitled to compensation, under the contract, for all grading done east of Paxton. Whether it was done before or after the track was laid, is wholly immaterial. It is none the less grading for that reason. It would be absurd to call raising the track two and a half feet "surfacing," within any definition of that word given by civil engineers. The proof shows the track on that portion of the road was laid in the winter, when it was impracticable to do the grading that ought to have been done before it was laid. It was so done at the urgent request of appellants, and at greatly increased expense to appellees.

It is said, the estimates made by appellees' engineer of the amount of this grading is unreliable, owing to the difficulty in distinguishing the old from the new work. In a measure, this is so, but it was all the evidence the jury had on the subject. Appellants' engineer declined to make any estimate for that particular work and no evidence was offered by them on that question. Having failed to do so, it is their own neglect if the jury were compelled to consider the case on unreliable testimony, against which no relief can be had.

The court sustained a demurrer to appellants' several special pleas, and that decision is assigned for error.

The pleas were all essentially the same. The substance is, the Lafayette, Bloomington and Mississippi Railroad Company leased its road to the Toledo, Wabash and Western Railway Company, by the terms of which the former company was to complete the road from Bloomington to the State line, was to pay the interest on $1,300,000 of bonds to be issued

and secured by mortgage on the road and its franchises, until three months after the 1st day of July, 1872, at which time the road was to be completed and turned over to the latter company. The money realized from the sale of the mortgage bonds was to be appropriated to the construction of the road. Appellants assumed the obligations of the Lafayette, Bloomington and Mississippi Railroad Company, and made a subsequent agreement with the Toledo, Wabash and Western Railway Company, by which it was agreed that if the road could be completed prior to the time named, the interest on the whole of the construction bonds should be saved for all the time they would thus hasten the completion of the road.

After the demurrer was sustained, appellants obtained leave to file a notice, under the statute, of special defenses, which notice, in substance, contained the same matters and things as were contained in the pleas. This might, under the settled practice, be deemed a waiver of any right to assign as error the decision of the court sustaining the demurrer; but as the court rejected certain evidence offered under the notice, which raises the same questions, we must consider the objection.

It is claimed, from the facts set forth in the pleas, the actual damages sustained by appellants in consequence of the failure to complete the road within the agreed time, is a sum equal to the interest on $1,300,000, from January 1, 1872, to the time the road was accepted and turned over, on the 25th day of June. The evidence shows appellants did receive a rebate of the interest on that sum, under their agreement with the lessee of the company for which they were building the road, from the date of the acceptance of the road until the 1st day of July, 1872.

We do not understand upon what principle the rule of damages contended for can be maintained. How can it be said, the damages resulting from the non-performance of a contract between parties can be measured by a mere private agreement between others, to which they are strangers? It is, no doubt, true, if the road had been completed by the 1st

day of January, 1872, appellants would have obtained a rebate of the interest on the total amount of the construction bonds; but if it was intended to hold appellees responsible in case of non-performance of their contract, according to the terms of their private agreement with the lessee of the road, they should have made it a part of the contract the damages should be so measured. Although appellees may have known there was such an agreement between appellants and the lessee, they will not be presumed to have contracted with reference to any such mode of ascertaining the damages, and in the absence of any special contract they are bound by no such rule. Had it been known it was expected appellees would be held responsible for such extraordinary damages, it is hardly probable they would have entered into the contract, for the consequences of a failure for only a few days would be most disastrous. The damages insisted upon, under this rule, exceed $44,000—a sum enormously out of all proportion to the amount to be paid for the entire work.

The rebate of the interest upon the construction bonds, which was to be allowed to the appellants by the lessee, was really for the use of the road during that period it should be completed, prior to the 1st day of July, 1872. It was a matter of contract between the parties, and we can not know what motives induced them to make it, nor can we know whether it was a profitable or unprofitable contract for the lessee. It would be unjust, however, to hold appellees responsible as for damages for that amount of interest, without regard to the question whether it was a reasonable or unreasonable compensation for the use of the road. The private contract between these parties was not evidence of the reasonable value of the use of the road, which would constitute the true measure of damages. When this contract was made with the lessee, it was, in all probability, contemplated the Indiana division of the road would be completed by the 1st day of January, 1872. This was not done, and it is manifest the

road, for profitable use, was worth vastly less with that eastern connection wanting.

The demurrer was properly sustained to the pleas, and, for the same reasons, the evidence offered under the notice was rightfully excluded.

The only question in the case about which we have had any serious doubt, arises on the third instruction given for the appellees. The jury were told, if appellants permitted appellees to proceed with the work after the expiration of the time limited for its completion, and afterwards accepted the road, "then the defendants have waived the performance on a day fixed, and can not set off damages growing out of the failure to complete the road within one hundred and thirty days after the commencement of the work, against any claim which the jury may believe, from the evidence, the plaintiffs have against the defendants, under the contract offered in evidence in this case."

This instruction, if it was understood to charge the jury, because appellants simply permitted appellees to complete the road under their agreement and afterwards accepted the work, though not done in time, they thereby waived their right to claim damages for the non-fulfillment of the contract, does not state a correct proposition of law. An instruction stating that principle would be inconsistent with the other charges given, and with the theory on which the case was tried.

Appellants, with great propriety and consistency, could urge the contractors to finish the work under the contract, and afterwards accept it. All they would waive in such case would be the performance on a fixed day, but nothing else. The contractors might recover for the work done on a *quantum meruit*, but appellants would have the clear right to insist upon and recoup such damages as they may have sustained by reason of the non-compliance with the contract, if the delay was not caused by their default. This is the doctrine, as declared in *Nibbe* v. *Brauhn,* 24 Ill. 268.

The court distinctly instructed the jury, in view of the

evidence, not only in the charges given for appellants but in those given for appellees, that if appellees failed to perform the work on their part to be performed, within the time named in the contract, and such failure was not attributable to the default of appellants to furnish things agreed to be furnished for the use of appellees in the work, then they will allow as damages the value of the use of the road during the time of such delay, unless the time of its completion was waived. Upon this point the court gave, at the instance of appellants, three or four charges, stating the law as counsel now insist it is, and the instruction claimed to be faulty was so qualified by the others given for appellants and appellees, it could not have misled the jury. The error, therefore, if any, was not prejudicial. Evidence of the value of the use of the road was given and considered. We must conclude, therefore, the jury found the delay was occasioned by the default of appellants. The evidence would justify such a conclusion, and we are not warranted in saying they have found incorrectly.

All that was material to the elucidation of the case in the refused instructions was contained in those given, and there was no error in refusing them.

The cause was fairly presented to the jury, and with the conclusion, so far as we can see, neither party has any just reason to be dissatisfied.

The judgment is accordingly affirmed

*Judgment affirmed.*