### HUNT *v.* OREGON PAC. RY. CO.

*(Circuit Court, D. Oregon.* October 29, 1888.)

**1. DAMAGES—FOR BREACH OF CONTRACT.**

The party injured by the breach of a contract is entitled to recover all his damages, including gains prevented, as well as losses sustained, provided such damages may fairly be supposed to have been within the contemplation of the parties when they made the contract, and are certain, both in their nature and in respect to the cause from which they proceed.

**2. SAME.**

The plaintiff sues the defendant for damages on an alleged breach of a contract whereby the former agreed, in consideration of certain payments, to be made as the work progressed, to construct 52 miles of railway for the latter. The defendant sets up a counter-claim for the failure to construct the road, and claims damages therefor: (1) For the loss of the use of the road; (2) for the loss of certain freight which it had made "arrangements" to carry over the road; and (3) for the sum it will cost to complete the road in excess of the contract price. On motion of plaintiff, the last two clauses were stricken out of the counter-claim; the one, as arising on a collateral contract not within the contemplation of the parties, and the other as being uncertain, and also contingent on the future construction of the road by the defendant.

*(Syllabus by the Court.)*

At Law. Action to recover damages.
*George H. Williams*, for plaintiff.
*John W. Whalley* and *William T. Muir*, for defendant.

DEADY, J. The plaintiff, a citizen of Ohio, brings this action against the defendant, a corporation formed under the laws of Oregon, to recover $160,000 damages for an alleged breach of a contract entered into by the parties on August 8, 1887, whereby the plaintiff, for a consideration therein specified, undertook to construct two sections of the defendant's railway, on the eastern extension thereof, one of 42 miles in length, and the other of 10; the first 20 miles to be completed by November 15, 1887, the next 22 miles by April 1, 1888, and the last 10 by May 1, 1888. The breach alleged is that the defendant wholly failed to make payments on the work as it progressed, according to the agreement, or to furnish transportation, iron, steel, or ties, as provided therein; wherefore the plaintiff was compelled to give up the performance of the contract after doing $80,000 worth of work thereunder, and did quit the work on December 12, 1887.

The answer of the defendant was filed April 5, 1888, and contains a counter-claim, miscalled a "further defense," founded on alleged breach of the contract in question by the plaintiff, wherein it is alleged that the plaintiff, after performing work and labor, and furnishing material to the estimated value of $50,643.56, failed and refused to comply with said contract, and about December 10, 1887, abandoned the same, and notified defendant thereof; that the work is still unfinished, nothing having been done thereon since the abandonment by the plaintiff.

The counter-claim concludes with three demands for special damages:
v.36F.no.8—31

(1) That the work cannot now be completed in less than a year, during which time the defendant will be deprived of the "use and operation" of that portion of its road, to its damage, $50,000. (2) That the defendant, relying on the good faith of the plaintiff in the premises, made "arrangements" to carry over its road from the eastern terminus of the portion the plaintiff agreed to construct "a large amount of freight to and from the seaboard, at Yaquina bay, Or., during the season of 1888, to-wit, to the amount of $50,000; and that, owing to the failure of the plaintiff to perform his contract, the defendants cannot carry said freight, to its damage, $50,000. (3) That the defendants will be compelled to pay out large sums of money in excess of the contract price to complete the work that the plaintiff undertook, and in so doing will be put to a large amount of trouble and expense, to its damage, $100,000.

The plaintiff moves to strike out of the counter-claim each of these claims for damages, and the allegations in which they are set forth, because they are (1) "irrelevant and immaterial," and (2) "for conjectural or speculative damages."

The questions involved in this motion have been thoroughly argued by counsel. The difficulty in this and like cases lies, not in the ascertainment of the law of the subject, but the application thereof. 1 Sedg. Dam. 65.

Counsel for the plaintiff and defendant both cite and rely on the cases of *Griffin* v. *Colver*, 16 N. Y. 489, and *Snell* v. *Cottingham*,, 72 Ill. 161.

In the New York case it was held that, on a breach of contract to deliver a steam-engine at a certain day, for the purpose of driving a planing-mill and certain other machinery, the ordinary rent or hire which could have been obtained for the use of such mill and machinery, the operation of which was suspended for a week for want of the engine, might be recovered as damages, but not the estimate of what might have been earned by the use of the engine and machinery in the meantime, had the contract been complied with.

In the course of an able and interesting opinion in the case, SELDEN, J., states the general rule on the subject as follows: "The party injured is entitled to recover all his damages, including gains prevented as well as losses sustained," subject to only two conditions: "The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to cause from which they proceed."

In the Illinois case it was held that, where a contractor fails to construct a railway within the time limited in the contract therefor, but does complete it afterwards, the measure of damages for the breach is the value of the use of the road from the time it ought to have been finished until it was done; but not the loss to the owner of the road, by reason of his inability to comply with a contract between himself and a third person for the use of the road from the time it should have been completed, even though the contractor may have known of the existence and

terms of such contract, unless he expressly agreed to such a measure of damages.

And still, the difficulty remains: Do the damages claimed in this case flow directly and naturally from the alleged breach of the contract? and are they proximate consequence thereof, and not speculative or contingent?

The tendency of judicial decisions seems to be in favor of allowing a party to show, if he can, that he has suffered some damage by the breach of a contract, either in gains prevented or losses sustained, whenever such gains or losses directly relate to or arise out of the subject-matter of the contract, and not something collateral thereto. *Ruff* v. *Rinaldo*, 55 N. Y. 664; *Hexter* v. *Knox*, 63 N. Y. 561; *Hinckley* v. *Beckwith*, 13 Wis. 34; *Shepard* v. *Gas-Light Co.*, 15 Wis. 349; *Davis* v. *Talcott*, 14 Barb. 611; 1 Sedg. Dam. 77; Field, Dam. p. 7, § 10.

Still, it has been found impracticable to devise any definite and comprehensive rule applicable alike to the facts of all cases. Therefore in each case the measure of damages must to some extent depend on its own circumstances. Field, Dam. p. 10, § 13.

The damages claimed on account of the estimated difference in the cost of constructing the road by the defendant and the contract price are, in my judgment, too uncertain to be allowed. It can only be conjectured what the cost of constructing the road some time in the future will be. Owing to the fluctuations in the price of labor and materials, it may cost more or less to construct the road in 1888–89 than in 1887–88. Besides this, they are contingent. The defendant may never construct the road; and until it does, and necessarily at a greater cost than the contract price, it cannot be said to have sustained any damage by the breach.

The contract gave the defendant the right, whenever, in the judgment of its general manager, the work was delayed so as "to imperil" its completion within the time limited, "to assume entire control of the work," and complete it; and "any outlay so incurred by the defendant in excess of the contract price of the work shall be a charge against any balance" due the contractor for work done under the contract. This provision in the contract indicates plainly that the parties did not contemplate the payment of any damages for the delay or failure to construct the road, until it was ascertained by the completion of the same what amount, if any, it cost in excess of the contract price.

The claim for $50,000 damages, alleged to have been sustained by the defendant's not being able to keep its "arrangement" to carry that amount of freight over the road in 1888, cannot be allowed. It consists of gains prevented on a collateral contract for the carriage of freight over the road by the defendant. These profits, if realized, would not have been the direct fruit of the contract between the plaintiff and the defendant. They could not have been within the contemplation of the parties to the contract of construction at the time they entered into it. The authorities are at one on this point, and particularly the case of *Snell* v. *Cottingham*, *supra*.

The claim for damages for the loss of the use of the road presents a different question. Where, from the nature of the case, the value of such use can be shown with reasonable certainty, the authorities favor the allowance of the claim. See *Griffin* v. *Colver*, and *Snell* v. *Cottingham, supra.*

It is impossible to say, on this motion, in advance of the evidence, whether, owing to the condition of this piece of unconstructed road, the defendant can show with reasonable certainty, as in the case of the rent of an ordinary house or mill, what the use of the same was, or would have been, reasonably worth during the time its completion was actually delayed by the failure of the plaintiff to comply with his contract; but I think it ought to be allowed to try—to have the opportunity to do so.

The counter-claim does not directly allege that the defendant is the owner or operator of any railway of which the section the plaintiff contracted to construct is a part or extension to the eastward, but so much may be implied from what is alleged. Nor, granting the implication, does it appear therefrom where the western or other terminus of said road is, except as it may be implied from the statement in the second claim for damages, that the defendant had made arrangements to carry over said road from the eastern terminus "of the portion thereof the plaintiff agreed to build" "a large amount of freight to and from the sea-board at Yaquina bay."

Under these circumstances, the right of the defendant to damages for the loss of the use of the unconstructed road will depend on the nature of the case made by the evidence.

The motion to strike out is denied as to the first claim for damages, and allowed as to the other two.