FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation, Plaintiff-Appellant,

v.

RELIANCE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee,

and

Le Roy Cech, Defendant.

Nos. 85–1843, 85–2535.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1986.

Decided July 7, 1986.

Edward P. McNeela, McNeela & Griffin, Ltd., Chicago, Ill., for plaintiff-appellant.

Robert J. Cozzi, Galliani & Doell, Ltd., Chicago, Ill., for defendant-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Fidelity and Deposit Company of Maryland brought an action for declaratory judgment against Reliance Federal Savings and Loan Association, asking the district court to hold that a bond it had issued did not cover a $247,500 loss claimed by Reliance. After a bench trial the court entered judgment in favor of Fidelity, finding that although Reliance had prevailed on the issue of coverage, it had failed to give Fidelity the required notification of loss. Upon Reliance's motion for reconsideration, however, the court reversed its decision on the issue of notice and entered judgment for Reliance. Fidelity now appeals the decision on coverage and the prejudgment interest awarded to Reliance. We affirm.

## I.

Reliance incurred its loss as a result of a check kiting scheme perpetrated by one of its customers, Le Roy Cech. Cech was in the habit of writing large checks on an account he had with the Metropolitan Bank and Trust Company, and then presenting those checks to Reliance in exchange for Reliance treasurer's checks made payable to him. Cech's asserted purpose for this maneuver was his need to present evidence of "performance capacity" when he sub-

mitted bids to various government entities for construction work. Cech apparently had covered his checks to Reliance during the ten months that he engaged in these transactions, but the $247,500 worth of checks that he exchanged for Reliance checks on November 28, 1981, bounced when Reliance attempted to collect on them. Although Reliance requested a stop payment order on its checks, the funds had already been transferred to Cech's Metropolitan account, and by the time it received its December 15, 1981 bank statement Reliance knew that it had sustained a loss.

Reliance notified Fidelity by mail on January 28, 1982 that it has experienced a $247,500 loss, and it filed a Proof of Loss in that amount on February 2, 1982. The bond under which it claimed payment from Fidelity was a Savings and Loan Blanket Bond that basically covered losses incurred as a result of robbery, burglary, larceny, theft, or "other fraudulent means" on the premises of Reliance, except for losses resulting from loan transactions. On April 16, 1982, Fidelity denied Reliance's claim on the grounds that the loss had not occurred as a result of fraud and that the transaction between Reliance and Cech was in the nature of a loan. Sometime later, Fidelity filed its declaratory judgment action in district court seeking the court's approval of its position.

## II.

In finding that the loss was covered by the Fidelity bond, the district judge used Cech's plea of guilty to a charge of theft, which arose out of this transaction, as evidence that Reliance's loss was a result of a fraudulent transaction as defined in the bond. Fidelity objects to this procedure, claiming that the district court had held Cech's conviction to be conclusive evidence and had absolutely precluded Fidelity from putting in evidence on the issue. If this is indeed what the trial court held, it would have been an erroneous interpretation of Illinois law. *See Country Mutual Insurance Co. v. Duncan,* 794 F.2d 1211, 1215 (7th Cir.1986) (under Illinois law, conviction based on guilty plea, "like any other admission, is not necessarily conclusive as to the facts underlying the plea"; weight of plea will vary). *Compare Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 548–49, 384 N.E.2d 335, 342–43 (Ill.1979) (even conviction based on jury determination of guilt beyond reasonable doubt constitutes only *prima facie,* and not irrebuttable, evidence of underlying facts).

■ Our review of the record and the trial judge's remarks, however, convinces us that at most Cech's conviction, in conjunction with the parties' many stipulated facts, was treated as satisfying Reliance's burden of making out a *prima facie* case of coverage, thus switching the burden to Fidelity. The judge's oral ruling clearly allowed Fidelity to rebut this evidence. For example, the judge repeatedly referred to the conviction as "admissible" on the issue of the nature of the transaction; the transcript does not reveal any language suggesting that the judge felt the evidence was conclusive. Moreover, the judge invited Fidelity to introduce rebuttal evidence, saying "[t]hat obviously has a considerable bearing on whether or not this transaction was a loan, but it doesn't dispose of the issue. It is evidence which is admissible on the issue, but the plaintiff is still free to go ahead and attempt to show that what was involved here was a loan ...." Thus, we are unable to agree with Fidelity's contention that it was precluded from introducing evidence as to coverage. In any case, if Fidelity misunderstood the court's ruling, it should have made an offer of proof so that the reviewing court could determine whether any error affected Fidelity's substantial rights. *See, e.g., Ellis v. City of Chicago,* 667 F.2d 606, 611–12 (7th Cir.1981); Federal Rule of Evidence 103(a)(2). As a result of Fidelity's failure to do so, we cannot sustain its claim that Reliance failed sufficiently to establish that the transaction was fraudulent.

■ Fidelity next appeals the trial court's finding that the transaction was not a loan. Although Reliance had the initial burden of demonstrating that its claim fell

within losses covered by the bond, Fidelity had the burden of proving that the loan exclusion clause applied. *See, e.g., State Farm v. Schmitt,* 94 Ill.App.3d 1062, 50 Ill.Dec. 493, 495, 419 N.E.2d 601, 603 (Ill. App.1981). The trial court did not err when it sided with Reliance on the loan issue. The record reveals that Reliance had issued treasurer's checks in exchange for Cech's personal drafts for some ten months without mishap. This clearly indicates that when Reliance issued a treasurer's check to Cech, it presumed it was receiving in return a thing of like value. Fidelity's evidence may demonstrate that Reliance exercised less caution than it perhaps should have, but it does not prove that Reliance and Cech engaged in a credit transaction—formal or informal. As a result, we affirm the district court's determination that Reliance's loss was covered by the bond.

### III.

■ Fidelity's final argument concerns the trial court's decision to award Reliance prejudgment interest. Under Illinois statute, prejudgment interest is payable "at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." Ill.Rev.Stat. ch. 74, § 2 (1977). As this circuit held in *First National Bank v. Insurance Company of North America,* 606 F.2d 760, 769–70 (7th Cir.1979), a Banker's Blanket Bond is covered by the statute, and prejudgment interest is to be awarded thereon if the proof of loss "submitted to the insurance companies contained a claim that was capable of ascertainment by mere calculation or computation ... [and thus] was liquidated." The trial court properly determined that since the Fidelity bond was covered by the Illinois statute and Reliance's claim was liquidated, prejudgment interest was required.

### IV.

The judgment of the district court accordingly is AFFIRMED.