A. KUSH & ASSOCIATES, LIMITED,
an Illinois corporation,
Plaintiff–Appellant,

v.

AMERICAN STATES INSURANCE
COMPANY, an Indiana
corporation, Defendant–Appellee.

Nos. 89–1595, 89–1707.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1990.

Decided Feb. 25, 1991.

Scott A. Brainerd, and John L. Gubbins, Gubbins & Associates, Andrew Brainerd, Brainerd & Bridges, Chicago, Ill., for plaintiff-appellant.

James P. DeNardo, Christine L. Olson, Stephen T. Mikus, Samual A. Purves, John C. Bartler, Mark F. Dewane, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., John L. Bomster, Adler, Pollock & Sheehan, Providence, R.I., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr. and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant A. Kush & Associates ("AKA") brought suit against its insurer, defendant-appellee American States Insurance Company ("American States"), alleging that American States breached its duty to defend and therefore owed AKA for various costs AKA incurred in defense of a copyright suit. AKA also accused American States of violating the Illinois Consumer Fraud and Deceptive Trade Practices Act and the unreasonable and vexatious practices section of the Illinois Insurance Code.[1] The jury verdict awarded $190,-000.00 to AKA for reasonable costs in the investigation and defense of the copyright suit and for reimbursement of the amount of settlement. The court found for American States on the statutory claims. AKA now challenges, as plainly stated in its brief, "the entirety of the trial of this case and virtually all rulings made during and following the trial."[2]

As will be seen, some little jewelry pendants cause some big problems which we endeavor to sort out. For the following reasons, we affirm the district court's decision.

## I. FACTS

In October 1980, AKA purchased a "Super-Shield Umbrella Liability" policy from American States, through American States' sales agent William J. Kamm of William J. Kamm & Sons, Inc. The umbrella policy provided, in relevant part, that American States agreed to indemnify AKA for

> ultimate net loss in excess of the retained limit hereinafter stated [$10,-000.00], which the Insured may sustain by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract:
>
> > (c) Advertising liability. For damages because of libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy arising out of the Named Insured's advertising activities.[3]

This umbrella policy also established that American States would defend any suit brought against AKA if it fell within the coverage of the policy.[4]

AKA's business entailed selling products by mail in promotions with large companies such as American Express ("AMEX"). In 1982, AKA contracted with AMEX to market pendants to AMEX cardholders. AKA then sought out companies to provide the pendants. AKA first negotiated with Columbia Jewelry Contractors, Inc. ("Columbia"), a New York jewelry manufacturer. In 1983, Columbia supplied four pieces of jewelry for test marketing by Kush and AMEX. Before AKA negotiated further with Columbia, Weingeroff Enterprises, Inc. ("Weingeroff") approached AKA and offered to supply the pendants at a lower price than Columbia. AKA provided Weingeroff with samples of Columbia's pendants, and once satisfied that Weingeroff could match the quality of the Columbia jewelry, contracted with Weingeroff. In May 1983, AMEX began advertising the sale of the pendants to its cardholders.

---

**1.** In *Kush v. American States Ins. Co.,* 853 F.2d 1380 (7th Cir.1988), this court affirmed the district court's dismissal of the complaint for failure to state a claim on the issue of intentional infliction of emotional distress brought individually by Kush, president of AKA.

**2.** We would like to remind counsel for AKA that "lawyers best serve their clients' interests by concentrating on—and presenting fully—the

subjects with the best chances of producing a favorable result." *United States v. Bradley,* 892 F.2d 634, 635 (7th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990).

**3.** Super–Shield Umbrella Policy, Section I.

**4.** Super–Shield Umbrella Policy, Section II.

On December 31, 1983, Columbia filed suit against AKA and AMEX, in the Southern District of New York, in which it accused AKA and AMEX of copyright infringement, trademark infringement, unfair competition, false advertising, and other unlawful activities in connection with the pendants. This suit by Columbia (the "New York" litigation) generated the insurance troubles between AKA and American States that are presented in this appeal.

In January 1984, AKA vice president Ted Schrage telephoned William Kamm, the policy sales agent. Schrage mentioned that a copyright suit had been brought against AKA and that AKA wanted to file a claim with American States. Kamm told Schrage that copyright infringement was not covered under AKA's policy. Al Kush, president of AKA, then called Kamm and Kamm also informed him that AKA's insurance policy would not cover the Columbia suit. Kush further contacted Kamm in March, May, August and September of 1984, and January 1985, to inquire about the insurance coverage for the New York suit. Kamm held to his position that AKA was not covered. During this time, Kush never provided Kamm with a copy of the New York complaint.

Kush did not discuss the suit with anyone at American States until AKA's attorneys concluded, in January 1985, that the umbrella policy covered the New York suit. Kush told Kamm about his attorneys' determination, and Kamm agreed to refer the claim to American States. American States received a letter from AKA's attorneys dated February 20, 1985, in which AKA discussed the allegations in Columbia's complaint and demanded defense against and indemnification for Columbia's claims. This letter was AKA's first direct contact with American States.

On February 27, 1985, Bill Schoeneman, a division claims manager for American States, met with one of AKA's attorneys and was told about AKA's litigation expenses and other costs relating to the New York suit. Schoeneman presented AKA's attorney with a non-waiver agreement, which AKA signed in April, 1985.[5] Schoeneman promised a coverage decision within thirty days. Schoeneman also indicated that American States was pleased with the work of AKA's attorneys and saw no need to change AKA's representation in the New York suit. Schoeneman sent a letter to American States' home office and included the material he received from AKA's attorneys.

Schoeneman and counsel for AKA met again on March 27, 1985. AKA's attorney revealed that AKA had filed a declaratory judgment suit against Weingeroff in the Northern District of Illinois, and that AKA planned to join American States in the suit (the "Chicago" litigation). The parties agreed that American States should be joined as a defendant in what was to be "friendly" litigation and both sides assured cooperation. AKA filed suit against American States on April 8, 1985.

Counsel for American States met with AKA's attorneys in May and June 1985, and discussions focused on how to resolve AKA's claims against American States. American States' attorney then reviewed the matter, consulted with American States, and maintained contact with AKA. The attorneys met again on September 13, 1985, and at that time American States presented an oral proposal to AKA. At trial, American States contended that an October telephone conversation resulted in an oral agreement between the parties. The jury decided this issue and found no agreement. American States does not appeal that decision. On November 1, 1985, American States offered a written proposal to AKA. The parties did not agree on the proposal and each side suggested modifications which the other side did not accept.

---

**5.** A non-waiver agreement is a form stating that neither the insurer nor the insured will waive any rights under the insurance policy. Schoeneman testified that because of the late reporting by AKA and coverage questions, American States wanted this agreement signed to establish that an investigation by American States would not mean that American States was waiving its policy defenses.

Emerging from this so-called "friendly litigation" was and is a complicated and somewhat hostile legal battle. AKA's fourth amended complaint presented the major claims against American States upon which the district court entered its judgment. Count VII alleged that American States violated the Illinois Consumer Fraud and Deceptive Trade Practices Act; Count VIII alleged that American States' actions constituted vexatious and unreasonable conduct under the Illinois Insurance Code; and Count IX alleged breach of contract by American States for its failure to provide a defense for AKA.

In its answer to the fourth amended complaint, American States admitted that it owed a duty to defend and waived defenses regarding notice; therefore, the district court, finding no genuine issue of material fact on the count IX breach of contract issue, entered partial summary judgment for AKA on July 17, 1987. During a motion for mistrial on November 21, 1988, the district court modified its 1987 partial summary judgment decision. The district court determined that Kamm was not an authorized claims agent for American States and that American States' actions did not constitute an actual *breach* of the duty to defend AKA. The court maintained, however, that American States did have a duty to pay the reasonable cost of defense.

In the midst of this Chicago litigation, AKA reached an agreement with Columbia and AMEX and settled the New York litigation in February 1987. AKA and AMEX entered into a settlement agreement in which AKA agreed to pay $50,000.00 to the New York plaintiffs. Also as part of the settlement agreement, AMEX assigned to AKA its claim for the costs to AMEX for the New York litigation.[6]

The jury trial, which included Weingeroff and American States as defendants, began on October 25, 1988. The focus of the American States portion of the trial was whether the attorneys' fees requested by AKA were "reasonable." During the trial, AKA moved for mistrial on its belief that

three substantive errors existed in the record, one of those alleged errors being the alteration by the court of its 1987 partial summary judgment ruling on breach of contract. The district court denied the motion and the case went to the jury.

The jury returned a verdict for AKA for damages in the amount of $190,000.00. The jury found that American States owed AKA $150,000.00 for reasonable attorneys' fees and costs in the New York litigation, and $40,000.00 ($50,000.00 minus the $10,-000.00 deductible) for the settlement of that litigation. The district court entered judgment for American States on the Consumer Fraud Act count at the close of AKA's case. The court included the Consumer Fraud Act decision in the final judgment, along with its decision for American States on the vexatious practices claim and the jury's verdict.

Both parties made post-trial motions. The court denied AKA's claim for prejudgment interest in a motion to amend the judgment; the motion for relief under the vexatious practices section of the Insurance Code; the motion for judgment notwithstanding the verdict; and the motion for a new trial. The district court did not decide AKA's motion for costs as a prevailing party. AKA now appeals most of the determinations made in the Chicago litigation, and American States cross appeals the denial of its motion for judgment notwithstanding the verdict on the $40,000.00 settlement claim.

## II. ANALYSIS

A. New York Litigation Attorneys' Fees and Costs

After hearing all the evidence at trial, the jury determined the amount it considered to be the reasonable attorneys' fees and costs expended by AKA in the New York litigation and awarded AKA $190,-000.00. AKA argues that it is entitled to a larger damage award of $370,079.79, its actual expenses, on the grounds that American States breached its duty to defend and

---

**6.** The district court held as a matter of law that AKA was not entitled to recover the AMEX legal fees from American States or anyone else. AKA challenges that determination.

indemnify. Great deference is given to a jury's finding and "it is well-settled that a jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict." *Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 237 (7th Cir. 1983). *See also, U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1369 (7th Cir.1985). AKA goes beyond a challenge of the jury's determination and argues that the district court erroneously limited the jury to the decision that it made. AKA contends that it is entitled to more than its reasonable fees and costs (or perhaps its unreasonable fees and costs), however, neither the case law nor common sense supports this position.

American States acknowledges that it owed a duty to defend AKA in the New York litigation. We noted in *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1047 (7th Cir.1987), that when an insurer has a duty to defend it "must reimburse [the insured] for the reasonable fees and costs incurred in that action to date." The Illinois courts hold similarly. *Conway v. Country Cas. Ins. Co.*, 92 Ill.2d 388, 396, 65 Ill.Dec. 934, 937, 442 N.E.2d 245, 248 (1982), explains that "an insurer's failure to defend, when it is under obligation to do so, makes it liable for reasonable attorney fees and the costs incurred by its insured."

■ An additional argument submitted by AKA to support its claim for actual costs is that American States should have been estopped from challenging AKA's fee and cost requests because an insurer is estopped to deny coverage when it is found to have breached its duty to defend.[7] AKA

states the law correctly, but misapplies it to this situation.

According to *Ervin v. Sears, Roebuck & Co.*, 127 Ill.App.3d 982, 988, 82 Ill.Dec. 709, 714, 469 N.E.2d 243, 248 (1984), "[w]here potential coverage exists and an insurer unjustifiably refuses to defend, the insurer is estopped, because of its breach of contract, from disputing any question of coverage in any later action against it on the policy." Unfortunately for AKA, there was no determination of an "unjustifiable" refusal to defend. Also, American States contests the amount of fees and costs claimed by AKA, not "coverage."

■ Insurers may take steps to prevent estoppel. If there is doubt as to whether or not an insurer has a duty to defend, the proper action is for the insurer to defend under a reservation of rights or to seek a declaratory judgment action. *Thornton v. Paul*, 74 Ill.2d 132, 156, 23 Ill.Dec. 541, 551, 384 N.E.2d 335, 345 (1978) (unless conflict of interest exists). AKA contends that American States failed to exercise these protective options, but that is not true. American States followed proper procedure, though not in a traditional manner, because American States and AKA agreed to join American States in the declaratory judgment action already instituted by AKA against Weingeroff. American States' actions do not warrant estoppel from asserting that it owes only reasonable fees and costs, as alleged by AKA. Even where estopped from denying coverage and where the insurer wrongfully refused to defend, breaching its duty to the insured, the insurer is liable, at most, "for the cost

7. While American States' duty to defend is not disputed, there is some question as to whether American States did in fact *breach* its duty to defend. In the 1987 partial summary judgment which held that American States breached its duty to defend, the district court based its decision on American States' admission that it had a duty to defend. American States did not admit to a breach of duty. During the trial, the district court altered its position from that earlier finding. The district court stated that American States did not actually breach its duty but that it did owe a duty to defend. Part of the trial court's reasoning for this change was its delayed determination that Kamm, who sold the insur-

ance policy to AKA and was the first person contacted by AKA about coverage of this copyright suit, was not an American States agent for claims purposes.

The change in reasoning by the district court is irrelevant to AKA's challenge of the costs awarded by the jury because, from the beginning of the trial, the declared purpose of the trial was to have the jury determine what constituted reasonable fees and costs. During trial, therefore, no issue existed regarding whether American States breached its duty to AKA or what would be the ramifications of such a breach. We fail to find error with this action by the district court.

and expense which the insured was put to by the insurer's breach of the insurance contract, and this liability embraces reasonable attorneys fees." *Ervin*, 127 Ill. App.3d at 988, 82 Ill.Dec. at 714, 469 N.E.2d at 248.

The estoppel theory advanced by AKA does not convince us that it is entitled to greater than the reasonable fees and costs determined by the jury, nor does its contention that a breach of the duty to defend and indemnify by American States entitles AKA to actual costs. We find that the district court properly presented the issue to the jury and given the evidence in the record and our deference to the jury, we affirm the jury's determination of damages.

## B. Additional Damages Claims

In addition to its claim for actual costs, AKA maintains that the district court improperly denied damages awards for the following: the costs and fees of the Chicago litigation; the AMEX legal fees assigned to AKA in settlement of the New York suit; prejudgment interest; and $60,-000.00 in lost interest on receivables. We disagree.

AKA argues that the trial court erred in failing to award it the costs expended in pursuing its rights under the insurance policy through the Chicago litigation. While we agree that American States owed reasonable fees and costs for defense of the New York copyright suit, as provided in *Tews Funeral Home*, we note that " 'Illinois law is well settled that an insured may not recover attorney's fees and costs for bringing a declaratory judgment against the insurer.' " *Tews*, 832 F.2d at

1047 (quoting *Tuell v. State Farm Fire & Cas. Co.*, 132 Ill.App.3d 449, 454, 87 Ill.Dec. 469, 473, 477 N.E.2d 70, 74 (1987)).[8] Accordingly, AKA is not entitled to its fees and costs in the Chicago litigation trial or appeal.

AKA seeks an additional $217,-370.00 for the legal fees expended by AMEX in the New York litigation and assigned to AKA through the settlement agreement. AKA interprets the umbrella insurance policy to include these AMEX legal fees within the American States indemnification coverage. Specifically, AKA asserts that the insurance policy covered liability assumed by the insured under contract, and that the original pendant contract with AMEX made AMEX a third-party beneficiary under the policy. When the parties settled the New York litigation, AMEX assigned to AKA this supposed right to collect its legal fees from American States. This claim was not included in the fourth amended complaint, and during the trial, AKA sought to submit the claim in a fifth amended complaint. The district court denied AKA this opportunity and AKA argues that this was error by the district court. We apply an abuse of discretion standard in reviewing a district court's denial of a motion to amend a complaint, *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225–26 (7th Cir.1988), and we find no abuse of discretion by the district court in denying AKA leave to amend its complaint during trial.

AKA claims that because "[a]n insurer's wrongful refusal to defend permits the insured to negotiate a reasonable settlement," *Maneikis v. St. Paul Ins. Co.*, 655 F.2d 818, 827 (7th Cir.1981), American

---

8. AKA points out that in *Green v. J.C. Penney Auto Ins. Co., Inc.*, 806 F.2d 759, 765 (7th Cir. 1986), this court stated, "where an insurer breaches its duty to defend its insured and thereby forces the insured to bear the burden of initiating a declaratory judgment action against the insurer, the insured can recover attorneys' fees incurred from bringing the declaratory judgment action." We can differentiate *Green* from the situation at hand because in *Green* a breach of the duty to defend "forced" the insured to bring a declaratory judgment against the insurer. Here, from the earliest stages of this litigation the insurer admitted to owing a duty to defend without admitting to a breach. AKA was not forced to bring a declaratory judgment action against American States, but instead, the parties agreed that American States should be brought into the Chicago litigation AKA originally brought against Weingeroff. The parties' initial intent was to keep the litigation "friendly." Also, *Green* was decided before *Tews*, and while we do not find that *Tews* expressly overrules *Green*, the *Tews* decision is the one that controls here.

States owes to AKA the entire cost of settlement, including the AMEX fees. The district court found that these AMEX fees were part of the settlement deal in the New York litigation, but that they did not fall within "advertising," for which AKA was covered under the insurance policy. The court also noted that there was no determination that these fees as arranged in settlement were reasonable, or that American States had sufficient notice that AKA would seek this element of the settlement agreement as damages.[9] The evidence supports these decisions by the district court.

AKA also cites *Maneikis* in support of its position that the AMEX fees are recoverable because AKA, as assignee, "stands in the shoes of the assignor and acquires all of the assignor's interests in the cause of action assigned." *Id.* at 828. In *Maneikis*, the settlement agreement allowed the insured's adversary to take the place of the insured and assert the insured's claim under the policy. The *Maneikis* situation does not parallel the one between AKA and AMEX. AKA and AMEX were not adversaries in the New York litigation, but rather were both Columbia's adversaries in the New York litigation. Nevertheless, AKA maintains that AMEX was entitled to coverage under AKA's insurance policy, and that AKA, as assignee, is entitled to the AMEX claim under the policy. The district court found that AMEX was not a claimant under the policy, and we find no abuse of discretion by the district court in making this finding.

AKA continued its attempts to recover additional damages in its post-trial motion to amend the judgment, denied by the district court, in which AKA sought prejudgment interest on the amount it paid in defense and settlement of the New York suit. As stated by this court, "[m]otions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). As with a motion to amend the complaint, we will reverse a district court's denial of a motion to amend the judgment only if the district court abused its discretion. *Cornelius v. LaCroix*, 838 F.2d 207, 212 (7th Cir.1988). AKA argues that the district court erred because it was entitled to prejudgment interest as provided by Illinois Revised Statute, chapter 17, paragraph 6402[10] and also as a damage proximately caused by American States' failure to defend.[11]

The district court based its ruling on the statutory prejudgment interest claim on its finding that under the Illinois Prejudgment Interest Statute, ILL.REV.STAT. ch. 17, para. 6402, prejudgment interest can only be awarded when the amount due is liquidated or subject to exact computation. *See Fidelity and Deposit Co. v. Reliance Fed. Sav. and Loan Ass'n*, 795 F.2d 42, 45 (7th Cir.1986) (may recover prejudgment interest where damages clearly liquidated); *Central Nat'l Chicago Corp. v. Lumbermens Mut. Cas. Co.*, 45 Ill.App.3d 401, 408, 3 Ill.Dec. 938, 943, 359 N.E.2d 797, 802 (1977) (recover prejudgment interest if amount liquidated or subject to exact computation). Given that the trial between AKA and American States focused on the

---

9. Late in the litigation when AKA first discussed amendment of the complaint to include the AMEX fees, it suggested American States owed $50,000.00; but when arguing the matter before the district court asserted that it was entitled to the larger $217,370.00 amount.

10. The Illinois statute states:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. ILL.REV.STAT. ch. 17, para. 6402.

11. AKA adds an additional prejudgment interest theory in its reply brief, yet we need not consider this issue presented anew in the brief Seventh Circuit Rule 28(f) clearly limits to "matter in reply." *See Federal Trade Commission v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1025–26 (7th Cir.1988).

determination of the reasonable fees and costs owed to AKA by American States because of American States' duty to defend, it is obvious that the amount due AKA was in dispute. The jury's award of approximately half of what AKA demanded bolsters this point.

The Illinois Supreme Court awarded prejudgment interest on attorneys' fees in *Conway v. Country Cas. Ins. Co.*, but only because as of the date of settlement in the suit involved, the fees "became due and capable of exact computation." 92 Ill.2d at 399, 65 Ill.Dec. at 939, 442 N.E.2d at 250. While the insurer's liability to defend becomes fixed at the time of refusal to defend, "the *amount* of its liability remain[s] unliquidated." *Associated Indem. Co. v. Insurance Co. of N. Am.*, 68 Ill.App.3d 807, 822–23, 25 Ill.Dec. 258, 271, 386 N.E.2d 529, 541 (1979). In *Central National*, the liability was in question, but the amount due under the policy was ascertainable. 45 Ill.App.3d at 408, 3 Ill.Dec. at 942, 359 N.E.2d at 802. In a case more similar to the Chicago litigation, where the amount due was difficult to determine and the jury awarded substantially less than the amount claimed, the court did *not* allow recovery of prejudgment interest. *Marvel Eng'g Co. v. Commercial Union Ins. Co.*, 118 Ill. App.3d 844, 854, 74 Ill.Dec. 272, 279, 455 N.E.2d 545, 552 (1983).

AKA cites *Conway* and *Central National* again in support of its position that it is entitled to prejudgment interest, because damages are to be " 'measured by the consequences proximately caused by the breach.' " *Conway*, 92 Ill.2d at 398, 65 Ill.Dec. at 938, 442 N.E.2d at 249 (quoting *Reis v. Aetna Cas. & Sur. Co.*, 69 Ill. App.3d 777, 790, 25 Ill.Dec. 824, 834, 387 N.E.2d 700, 710 (1978)). There are several flaws with this argument. In its motion to

the district court on the matter, AKA argued for prejudgment interest only under the Illinois statute, not as damages proximately caused by the breach. This in itself constitutes waiver and we need not discuss the matter further; however to appease AKA, we will continue.

The cases AKA uses to support this second prejudgment interest theory award prejudgment interest to the insured, and mention that following a breach of duty to defend, an insured may seek damages proximately caused by the breach; yet, these courts awarded prejudgment interest to the insured under the Illinois interest statute, and not as a consequence proximately caused by breach.[12] AKA's motion to amend the judgment did not establish a manifest error of law or fact, or present new evidence, thus the district court did not abuse its discretion in denying the motion. AKA is not entitled to prejudgment interest under either of its theories.

■ AKA asserts that the district court erred in denying its claim for $60,000.00 in interest lost by AKA due to withholding by AMEX of $1.8 million in AKA receivables, again, because of AKA's entitlement to damages for consequences proximately caused by the insurer's breach of duty to defend. AMEX withheld this money upon learning that AKA was not certain that its insurance would cover the New York litigation. The district court held that American States was not liable for these measures taken by AMEX, because this self-help measure by AMEX was not a foreseeable consequence. AKA asks that we remand for a jury determination of this element of damage. This is not necessary—AKA can only recover this if found under breach of contract to be a reasonably foreseeable consequence of the breach of duty to defend.[13]

---

**12.** Further problem for AKA on this theory is the district court's finding that American States did not breach its duty to defend but that American States owed a duty to defend. An explicit finding of breach would not change our position on prejudgment interest, and because we find no error with the district court's decision on the question of duty, the lack of such explicit finding adds greater support to the denial of prejudgment interest.

**13.** In making this assertion AKA assumes that American States breached its duty to defend. Breach is not relevant to our decision that the lost interest is not recoverable; yet, the district court's finding of a duty to defend, but no breach, further supports denial of recovery of this element of damages.

Basic contract law restricts damages recoverable for breach of contract to "those which were reasonably foreseeable and were within the contemplation of the parties at the time the contract was executed." *Kalal v. Goldblatt Brothers, Inc.*, 53 Ill. App.3d 109, 113, 11 Ill.Dec. 120, 123, 368 N.E.2d 671, 674 (1977). As in *Cencula v. Keller*, 180 Ill.App.3d 645, 651, 129 Ill.Dec. 409, 415, 536 N.E.2d 93, 97 (1989), AKA did not present evidence showing that the lost interest "naturally arose" from American States' failure to defend, or that payment of the $60,000.00 in lost interest following a failure to defend was within the contemplation of the parties when the insurance contract was executed. Certainly nothing in the insurance contract would indicate such foreseeability. *See id.* We therefore affirm the district court's decision to deny AKA the recovery of this interest.

## C. Consumer Fraud Act

▉▉▉▉▉ AKA asserts that the district court erred by entering judgment for American States on Count VII, the claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act. Ill.Rev.Stat. ch. 121½, para. 262–272. The district court based its finding on AKA's failure to prove "public injury" or an "effect on consumers generally," elements which the district court believed to be necessary for recovery under the Act. Ill.Rev.Stat. ch. 121½, para. 270a.[14] AKA alleges that it was entitled to a jury decision on this count; but because the district court found no issue of genuine, triable fact on the public injury element, the district court was correct in holding for American States on its motion for directed verdict on this count.

In diversity cases, we review directed verdicts according to the state's standard of review. *Consolidated Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1227 (7th Cir.1990). The Illinois standard of review is established in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967), which states,

"verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Count VII accused American States of failing to implement a proper claims procedure, misrepresenting coverage, and misrepresenting and delaying a coverage position. When questioned at trial by the district court judge on whether it could prove that any fraud committed by American States affected consumers generally, however, AKA acknowledged that it did not have any such evidence other than advertisements sent out by American States. The district court judge determined that the law of Illinois required a showing of an effect on consumers generally, of some public injury, and in finding that the evidence failed to show such an effect or injury, entered judgment for American States on Count VII.

The question then arises whether "public injury" is indeed an element that must be proved to establish a violation of the Consumer Fraud Act. At the time of the trial, the statute provided, "[a]ny person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person." Ill.Rev.Stat. ch. 121½, para. 270a. A split in the case law existed as to whether this Act could be used to address a purely private wrong, or whether the Act required proof of public injury or an effect on consumers generally. *See W.E. O'Neil Constr. v. National Union Fire Ins.*, 721 F.Supp. 984, 1000–02 (N.D.Ill.1989) (summarizes cases). In *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1039 (7th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990), this court determined that although the Illinois Supreme Court had not ruled on the requirement of public injury or an effect on consumers generally, the weight of the cases and the more persuasive reason-

---

**14.** While not specifically mentioned in the Act at the time of the trial, the Illinois courts were divided on whether these elements needed to be proved. The Illinois legislature amended this Act, effective January 1, 1990.

ing behind the requirement suggested that the Illinois Supreme Court would most likely adopt the public injury position. The district court judge in this case was well within his discretion in interpreting the Consumer Fraud Act to include the public injury element.[15]

The Illinois legislature has since responded to the uncertainty in this Act and enacted an amendment to section 270a that became effective January 1, 1990. The amendment adds that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." ILL.REV. STAT. ch. 121½, para. 270a. It is well-established in Illinois that "absent an express statement from the legislature, amendments to statutes will not be applied retroactively." *Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139, 1141 n. 5 (7th Cir.1990).[16] For example, *Mulligan v. Joliet Regional Port Dist.*, 123 Ill.2d 303, 321, 123 Ill.Dec. 489, 498, 527 N.E.2d 1264, 1273 (1988), explains that "without an express statutory provision stating that an act is to have retroactive effect, it can only be applied prospectively." *See also, Rivard v. Chicago Fire Fighters Union, Local No. 2,* 122 Ill.2d 303, 309, 119 Ill.Dec. 336, 339, 522 N.E.2d 1195, 1198, *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988) (amendatory act construed as prospective unless clear indication that legislature intended retroactive application.)[17]

Finding no express intent by the legislature that this amendment should apply retroactively, we hold that the amendment does not apply to this case. The district court correctly allowed American States'

motion for directed verdict after AKA admitted to having no evidence to show public injury or effect on consumers generally.

## D. Illinois Insurance Code

In an action against an insurance company to determine liability for loss, amount of loss or unreasonable delay in settling a claim, section 155 of the Illinois Insurance Code provides that the court may award to the insured reasonable attorneys' fees and other costs, if the court finds that such action or delay is vexatious or unreasonable. ILL.REV.STAT. ch. 73, para. 767. AKA claims that American States committed numerous improper claims practices in order to delay and reduce payments to AKA and that the actions of Kamm, when approached by AKA on claims matters, are attributable to American States. The trial court entered judgment for American States on this claim, and denied AKA's post-trial motion for relief under section 155 because it found that American States did not act unreasonably or vexatiously on the question of coverage or on the question of the amount of fees and expenses claimed by AKA. AKA urges that we reverse the district court's decision for the following reasons: AKA was entitled to a jury determination of the section 155 claim; the district court erred in failing to attribute the actions of William Kamm to American States in determining whether American States' practices were vexatious and unreasonable; and the district court made no explicit fact findings on this issue. We find no merit to these arguments.

---

**15.** We also believe that the evidence fails to show a violation of the Act, regardless of a public injury requirement. No explicit finding of fact was made below on this matter, although the trial judge did say at motion for directed finding at close of plaintiff's case

sounds to me like there has to have been a misrepresentation at the time the policies were purchased, and there is no evidence here from which the jury could find that at the time Kush purchased the policy or at the time it paid its last premium prior to the presentation of this claim ... [American States] had no intent to honor legitimate claims that were presented to it....

Transcript of Proceedings at 2010.

**16.** This court observed in *Cange v. Stotler & Co.,* 913 F.2d 1204, 1211 n. 4 (7th Cir.1990), that "[t]he Illinois legislature prospectively resolved" the division over the public injury issue through its amendment.

**17.** In the legislative hearing on this amendment, Representative Terzich stated that the amendment was intended to clarify the Consumer Fraud Act. We note, however, that "[t]he presumption of prospectivity cannot ordinarily be rebutted merely by contrary statements of individual legislators during legislative debates." *Rivard,* 122 Ill.2d at 309, 119 Ill.Dec. at 339, 522 N.E.2d at 1198.

■ We first turn to AKA's argument that the district court erred in denying its right to a jury trial on the section 155 claim. *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), states that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." A party does not have a right to a jury trial, however, when there is no genuine issue of triable fact. *Whitsell v. Alexander*, 229 F.2d 47, 48–49 (7th Cir.), *cert. denied*, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956).[18]

The district court judge determined that the court, and not the jury, was to decide the section 155 issue because of the wording of the statute and the Illinois case law. Even under *Curtis*, any error that may result from denying a plaintiff's request for a jury trial "is harmless if a directed verdict for the defendant would have been warranted." *Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir.), *cert. denied*, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). *See also, King v. University of Minnesota*, 774 F.2d 224, 229 (8th Cir. 1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1491, 89 L.Ed.2d 893 (1986) (failure to grant jury trial would be harmless error where there would have been no denial of constitutional right to jury trial had district court "simply entered a directed verdict for defendants"). Again, we apply the Illinois standard for directed verdict as established in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d at 510, 229 N.E.2d at 513–14. If all of the evidence, viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand, a directed verdict is proper. *Id.*

AKA's argument to this court is difficult to comprehend. The main focus of the argument appears to be the right to a jury trial on the section 155 issue. AKA continues, however, with the argument that we should reverse and remand on this issue because the district court failed to make findings of fact in rendering its judgment for American States on the vexatious practices claim. AKA also includes within its arguments, harsh factual allegations of misconduct by American States. AKA overlooks the fact that in the post-trial opinion issued by the district court, the court explicitly sets out its findings of facts.[19] AKA does not challenge these findings, but simply ignores them. While we do not determine the particular status of post-trial findings of fact in appellate review, we do accept the district court's statement of its findings in this manner because AKA failed to contest them.

The Illinois case law provides guidance on the section 155 issue. *Norman v. American Nat'l Fire Ins. Co.*, 198 Ill. App.3d 269, 144 Ill.Dec. 568, 591, 555 N.E.2d 1087, 1110 (1990), explains that "[t]he question of vexatious and unreasonable delay is a factual one, which must be based upon an assessment of the totality of the circumstances, taken in broad focus." *Norman* adds that "[n]either the length of time, the amount of money involved, nor any single factor taken by itself is controlling in determining if a delay is vexatious or unreasonable." *Id.* The court should consider "the attitude of the defendant," as well as the actual meaning of vexatious, which is " 'without reasonable or probable cause or excuse.' " *Id.* (citing Black's Law Dictionary 1403 (5th Ed.1979)).

The district court separated its analysis into two areas: whether American States acted vexatiously and unreasonably in making its coverage decision; and whether the refusal by American States to pay the actual fees and expenses demanded by AKA constituted unreasonable and vexatious

---

18. " 'There is no constitutional right to have twelve men [and/or women] sit idle and functionless in a jury-box.' " *Whitsell*, 229 F.2d at 49 (quoting *United States v. 243.22 Acres of Land*, 129 F.2d 678, 684 (2d Cir.1942), *cert. denied, Lambert v. United States*, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558 (1943)).

19. In its reply brief, AKA does recognize that the district court made findings of fact; yet it misstates the findings made by the district court.

conduct. On the coverage question, the court found that while Kamm, the insurance broker, told AKA the American States' insurance policy would not cover the New York suit, AKA did not challenge this contention for a "considerable period of time." The record supports this, as we note that while AKA first approached Kamm in January 1984, AKA did not make any direct contact with American States until February 1985. In addition, the district court noted that AKA did not submit a copy of the New York complaint to Kamm throughout that time. The precise allegations of the New York complaint first surfaced in the letter to American States in February 1985.

AKA finds fault with the court's conclusion that Kamm was not an American States agent for purposes of denying coverage. In his testimony, Kamm asserted that coverage decisions are beyond his area of responsibility and expertise. AKA did not present evidence to contradict this statement by Kamm.

The district court's analysis of the coverage question continued by correctly explaining that by the time American States became fully involved in the AKA claim, the parties focused more on the cost of defense rather than whether there was coverage. The district court found that American States indicated its approval with AKA's attorneys and with its approach to the case, and assured AKA that the reasonable fees and expenses would be covered by American States. The district court also noted that the relationship between the parties remained friendly until disagreements arose concerning the amount of fees and expenses AKA rightfully deserved.

In assessing the reasonableness of American States' refusal to pay the full expenses claimed by AKA, the district court focused on the jury's determination of what constituted reasonable fees and costs. While acknowledging that a jury verdict in favor of one party does not indicate that the

other party acted unreasonably or vexatiously, the district court did find that the jury verdict of $150,000.00, when AKA claimed $287,000.00, was a suitable indicator that American States did not act unreasonably or vexatiously in refusing to pay that large and all-inclusive amount claimed by AKA.

From these findings of facts on the issue and our own review of the record, we find that the evidence so clearly favors American States on the unreasonable and vexatious practices issue that no contrary verdict could stand. Therefore, in accordance with the Illinois standard on directed verdict and the harmless error standard for denial of jury trial, we find that the district court acted properly in denying a jury trial on the section 155 claim and in entering judgment for American States.

### E. Additional Arguments Raised by AKA

AKA moved for severance of its case against Weingeroff and American States, and the district court denied the motion. AKA asserts that the joint trial prejudiced its claims against American States. In a separate argument for an award of costs as a prevailing party, FED.R.CIV.P. 54(b), however, AKA boasts that the jury found for AKA on the four questions presented to it, and that AKA won on the question of defense and coverage.[20] We do not go as far as AKA in declaring its victory; yet we do not think the joint trial prejudiced AKA since it did achieve substantial success at trial. Absent a finding of prejudice, there is no right to a separate trial, so we find no abuse of discretion by the district court in this situation.

### F. Cross–Appeal by American States

American States presents a cross-appeal in which it argues that the district court erred in failing to grant its motion for judgment notwithstanding the verdict as to the jury's decision on the $40,000.00 settlement award. American States asserts that this amount was not

---

**20.** The district court made no determination on the prevailing party costs issue. We find no merit to the argument raised by AKA that the

district court abused its discretion by not awarding costs to AKA, since the district court made no final decision.

recoverable under the insurance policy. The policy provided indemnity only for claims arising out of the named insured's advertising activities, and American States contends that the New York suit concerned the advertising activities of AMEX and not AKA.

The district court judge denied the motion for judgment notwithstanding the verdict on the grounds that AKA was an active participant in the advertising activity from which the New York suit emerged. In the ruling on this post-trial motion by American States, the district court judge listed the following factors as support for this finding: AKA provided AMEX with the pendants being advertised; AKA consulted with AMEX during all stages in the preparation of the advertising; and AKA paid a portion of the cost of advertising and agreed to indemnify AMEX for liability resulting from the advertising. The judge added support to his reasoning by noting that the American States policy failed to define "advertising activity" and that the law requires that any ambiguity about an insurance policy be resolved in favor of the insured.

As in our review of directed verdicts, in diversity cases we apply the state's standard of review for judgment notwithstanding the verdict. *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1382 (7th Cir.1990). In Illinois, that standard is the same as for a directed verdict, as *Pedrick* provides. *Owens v. Stokoe*, 115 Ill.2d 177, 184, 104 Ill.Dec. 694, 697, 503 N.E.2d 251, 254 (1986). We review the district court's denial of judgment notwithstanding the verdict *de novo*, yet leave the evaluation and weighing of the evidence to the jury as factfinder. *Fort Howard*, 901 F.2d at 1382. The jury determined that American States owed the $40,000.00 in settlement costs. Because after reviewing the record we do not find that the evidence, viewed in its aspect most favorable to AKA, so overwhelmingly favors American States that no contrary verdict based on the evidence could stand, we affirm the district court's denial of American States' motion for judgment notwithstanding the

verdict and the $40,000.00 judgment stands.

## III. CONCLUSION

While AKA may have found fault with nearly every aspect of the Chicago litigation, we do not. We also find no merit in American States' cross-appeal. Therefore, the judgment of the district court is AFFIRMED, with each party to bear its own costs.