ARTHUR CENCULA, Plaintiff-Appellee, v. JAY KELLER, Defendant-Appellant.

Second District   No. 2—88—0569

Opinion filed March 7, 1989.

646

Leon Zelechowski, of Boorstein, Cohn & Zelechowski, of Chicago, for appellant.

Lawrence J. Petroshius, Jr., and Edward P. Brandes, both of Petroshius & Petroshius, of Waukegan, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendant, Jay Keller (the owner), appeals from a judgment entered upon the verdict of a jury in favor of plaintiff, Arthur Cencula (the contractor), for $93,559 as damages for breach of a construction contract between these parties. The jury also found for the contractor on the owner's counterclaim for damages from the contractor for his alleged failure to timely complete the project and do so in a workman-like manner.

The owner appeals, contending that the contractor was not entitled to recover as damages for breach of contract the $20,790 in interest the contractor paid on funds he borrowed to pay his subcontractors for labor and materials on this project; that the trial court erred in submitting the contractor's claim for "extras" to the jury and in certain rulings on the evidence; and the court erred in its construction of the contract between the parties. We affirm the judgment below, as modified.

Plaintiff and defendant entered into a contract in 1984 for the construction of a single-family residence in Antioch, Illinois, for a price of $161,000. This action was brought by plaintiff-contractor in 1985 in which it was alleged that the contractor had performed but the owner had failed to pay about $74,000 due under the contract and approximately $4,300 in claimed extras. The complaint also sought as consequential damages certain interest the contractor had paid on a bank loan taken out by him in 1985, allegedly for the purpose of paying the subcontractors on this project.

In 1986, the trial court denied the owner's motion to compel arbitration, finding that the owner had waived that contractual right, and this court affirmed that judgment in an interlocutory appeal taken by the owner. *Cencula v. Keller* (1987), 152 Ill. App. 3d 754, 757-58, 504 N.E.2d 997.

We consider first whether in this breach of contract action the plaintiff-contractor was entitled to recover interest he paid on a loan from a third party taken out to pay the subcontractors on the project.

Over the objections of defendant-owner, the trial court permitted the contractor to place in evidence testimony and documents relating to $70,000 the contractor borrowed from a bank in May 1985, after commencement of this action, and instructed the jury, also over the owner's objections, that the interest paid on the loan taken to pay subcontractors was an element of damages to consider if the contract was found to have been breached. Neither the parties nor the trial court was aware of any Illinois authority which had allowed the recovery of such interest as damages for breach of contract in these cir-

cumstances. The court, however, viewed the interest paid by the contractor as consequential damages similar to lost profits and instructed the jury that the interest could be recovered by the contractor "if such interest was foreseeable." The judge reasoned, and apparently determined as a matter of law, that it was within the contemplation of the parties when they entered the contract that if the owner did not pay the contractor, the latter would have to pay his subcontractors from another source, such as a bank loan at interest, which could then be recoverable as damages on breach of the contract. In its verdict, itemized damages awarded to the contractor included $20,790 expended by him as interest on the loan in question.

In the early case of *Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng. Rep. 145, the rule permitting damages in a breach of contract action was stated as follows:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i.e.* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

In *Hadley*, the defendant common carrier was found not liable for lost profits of plaintiff caused by delay in delivering a repair part for plaintiff's mill which had been shut down. The court considered that these lost profits did not arise naturally from defendant's breach of its contract to timely deliver the mill part nor were the lost profits damages the parties would have reasonably contemplated when making the contract, as the probable result of its breach.

Our supreme court recently considered and followed *Hadley v. Baxendale*, stating that it "provides that all damages which naturally and generally result from a breach are recoverable; it is only where damages are the consequence of special or unusual circumstances that it must be shown that the damages were within the reasonable contemplation of the parties." (*Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 318, 515 N.E.2d 61.) In *Midland*, the court determined that the lost profits sought to be recovered by plaintiff after defendant breached its contract to list plaintiff in defendant's telephone directory was a direct and foreseeable consequence of the breach, as a matter of law, as plaintiff's hotel profits formed the basis for its contract with defendant. (118 Ill. 2d at 319.)

The court concluded that an instruction that lost profits must have been within the reasonable contemplation of defendant when the contract was formed was properly refused as the increased profits which were lost, and sought to be recovered in that case, were not collateral to the original contract but were, rather, the essential purpose of the contract.

The *Midland Hotel* case teaches that where a contract has been breached recoverable damages are those which (1) naturally result from the breach, or (2) are the consequence of special or unusual circumstances which were within the reasonable contemplation of the parties when making the contract (118 Ill. 2d at 306). (See also *Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 267, 512 N.E.2d 1027; *Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 997, 493 N.E.2d 638; *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine* (1983), 118 Ill. App. 3d 782, 788, 455 N.E.2d 811.) In our view, neither element has been met in this case, and plaintiff-contractor was thus not entitled to recover for the interest cost at issue.

The parties have not submitted, nor has our research disclosed, relevant authority from Illinois, or another jurisdiction, which has discussed whether the interest in issue here may be considered as an element of damages for breach of a construction contract. The trial court analogized the claimed interest to lost profits, which have been recognized as recoverable as damages for breach of contract in the proper case. (See, *e.g., Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 315-16, 515 N.E.2d 61; *Spangler v. Holthusen* (1978), 61 Ill. App. 3d 74, 80-81, 378 N.E.2d 304.) The difficulty with such an analogy, however, is that the interest paid to a bank by the contractor for the loan of money to pay subcontractors on the job is not of the same character as lost profits. Such interest costs to the contractor do not arise naturally, in the usual course of things, as a result of a breach of contract, but are one of the many, and usual, costs which are expected to arise in the performance of a construction contract. Rents, taxes, insurance, and salaries are some of the other ordinary costs of operating a construction business. Loosely stated, it is these costs to the contractor, when applied to the price for which he agreed to perform the contract, that will determine what are the profits. Nor can it reasonably be considered under the evidence in the present case that either of these parties contemplated that, if the contract was breached by the owner, the plaintiff-builder would be entitled to recover such business costs as damages. The unreasonableness of such an assumption is perhaps best demonstrated by the lack of au-

thority in Illinois, or other jurisdictions, suggesting that such interest costs may be recovered as damages for breach of contract, absent an agreement to do so. See *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 541-42, 346 N.E.2d 494, 498-99.

In the factually closest case we have seen, *Snell v. Cottingham* (1874), 72 Ill. 161, our early supreme court rejected a claim for recovery of $44,000 as damages for interest lost on a bond issue which would have been saved if defendant had completed a construction project in the time required by his contract. In denying such damages the court stated:

> "We do not understand upon what principle the rule of damages contended for can be maintained. How can it be said, the damages resulting from the non-performance of a contract between parties can be measured by a mere private agreement between others, to which they are strangers? It is, no doubt, true, if the road had been completed by the 1st day of January, 1872, appellants would have obtained a rebate of the interest on the total amount of the construction bonds; but if it was intended to hold appellees responsible in case of non-performance of their contract, according to the terms of their private agreement with the lessee of the road, they should have made it a part of the contract [that] damages should be so measured. Although appellees may have known there was such an agreement between appellants and the lessee, they will not be presumed to have contracted with reference to any such mode of ascertaining the damages, and in the absence of any special contract they are bound by no such rule. Had it been known it was expected appellees would be held responsible for extraordinary damages, it is hardly probable they would have entered into the contract, for the consequences of a failure for only a few days would be most disastrous. The damages insisted upon, under this rule, exceed $44,000—a sum enormously out of all proportion to the amount to be paid for the entire work." 72 Ill. at 169-70.

No evidence was offered in trial of the present case either that the disputed interest naturally arose from a breach of the contract or that payment of such interest as damages on a breach was within the contemplation of either party when the contract was made. Nor may either conclusion be fairly drawn from any term in the contract.

■ We note that the trial court instructed the jury that the contractor could recover the interest paid on sums required to be borrowed to pay subcontractors "if such interest was foreseeable." The

court erroneously overruled the owner's objection that any such instruction, if given, should submit for determination by the jury whether such interest damages were within the reasonable contemplation of the parties when making their contract.

■ We conclude that the interest damage issue should not have been considered by the trial court or submitted in any form to the jury in this case and that the portion of the judgment which awarded $20,790 to the contractor for interest paid on the bank loan must be reversed.

The owner contends next that the trial court erroneously allowed the contractor to testify relating to "extras" not included in the original contract and in submitting that claim to the jury.

■ In order for a contractor to recover compensation for additional and extra work, he must show by clear and convincing evidence that: (a) the additional and extra work was outside the scope of the initial contract; (b) the extra items were ordered by the owner; (c) the owner agreed to pay for those extras, either by his words or conduct; (d) the contractor did not volunteer to provide the extra work; and (e) the extra work was not due to any conduct on the part of the contractor. (*R & R Construction Co. v. Junior College District No. 529* (1977), 55 Ill. App. 3d 115, 118, 370 N.E.2d 599.) Recovery for extra compensation is allowed only when the contractor has made his claim for an extra clear and certain before furnishing the item, not after. *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 390-91, 226 N.E.2d 270.

The contractor testified that there was an oral agreement as to each extra item and that these agreements were made at different times between October 1, 1984, the date construction commenced, and March 15, 1985. The contractor prepared a summary billing document of the extras dated March 15, 1985, which the owner refused to sign when presented to him. The owner objected to the lack of foundation for testimony regarding the extras, and before offering testimony relating to extras, the owner's attorney, Mr. Zelechowski, and the contractor's attorney, Mr. Petroshius, conferred with the trial judge outside the presence of the jury:

"MR. PETROSHIUS: I can go through it line by line.

MR. ZELECHOWSKI: There's been no foundation. He said there was an agreement between October 1 and March of 1985. There is no foundation as to those particular dates. The test is clear and convincing evidence.

THE COURT: It is? Clear and convincing evidence?

MR. ZELECHOWSKI: Yes, your Honor.

THE COURT: I would disagree with you.

MR. ZELECHOWSKI: For this there has been no foundation.

THE COURT: I think you should establish whether there was an agreement for a specific price as to a specific item or whether it was agreed that it would all be done at the end. I think that should be established. That would be the additional foundation. Go ahead."

█ In objecting to the foundation necessary for testimony as to extras to be admitted in evidence, and in stating that the burden on the contractor was by clear and convincing evidence, counsel for the owner confused the concept of the foundational requirements for the admissibility of evidence and the burden of the contractor to prove that the evidence with respect to contract extras clearly and convincingly favors the contractor. With respect to foundation, in determining whether the evidence is admissible, each party is entitled to present evidence which is relevant and material to his theory of the case, and evidence which tends to show conduct inconsistent with an opponent's theory is admissible. *Vendo Co. v. Stoner* (1982), 108 Ill. App. 3d 51, 54, 438 N.E.2d 933.

█ We find that the trial court was correct in overruling the owner's objection and admitting the testimony and evidence in this instance.

The contractor thereupon testified that all agreements as to extras occurred between October 1, 1984 and March 15, 1985, but could not give specific dates. He did state that the agreements occurred at different times, that all conversations regarding extras took place at the construction site, and both the owner and contractor were present at each conversation. The contractor testified there was an express verbal agreement between the parties and that each extra item was specifically agreed to by the owner, and the document prepared by the contractor was a summary billing for all separate agreements, although not prepared contemporaneously with each separate agreement. In each case where there was an agreement on an extra, the price was also agreed to at the same time, with certain exceptions where a price was not quoted but billing was at the contractor's standard cost. The contractor did not recall the owner's refusal to pay for any of these extras at the time they came up.

The owner argues that *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270, is analogous and applicable to the case at hand. However, in *Watson*, the judgment with respect to contract extras was entered despite an absence of evidence as to cer-

tain extras claimed by the contractor, and the contractor admitted there were no specific prior conversations for certain of the extras claimed. General testimony about agreements with the owner was there determined to be insufficient to sustain a claim for extras. (*Watson*, 79 Ill. App. 2d at 391.) In the present case, there was testimony by the contractor with respect to prior conversations and specific agreements by the owner to pay for contract extras at various times throughout the course of the construction, unlike *Watson*, where the contractor presented claims and sought the owner's agreement to pay for extras only after the work was completed.

The owner refers to an instance where one item was not expressly agreed to be an extra in which the owner took trim material worth $75 that belonged to the contractor which he then included in his billing summary. Although there was no express agreement, the material was established as an extra by the owner's conduct in taking the material, thus indicating his acceptance; the contractor did not have an opportunity to make his claim clear before furnishing the item as the owner simply took the trim.

The credibility of the witnesses and the weight to be given to the evidence, where there is some evidence on an essential point, is primarily for the jury, and its verdict should not be set aside lightly. (*In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 6, 441 N.E.2d 1277.) The jury heard the evidence from both sides and was correctly instructed on the elements required to be proved by the contractor and the burden imposed on him to prove those elements by clear and convincing evidence. The evidence was contradictory as to whether the owner orally authorized the extras, but apparently the jury chose to believe the contractor.

The owner also contends that the court's refusal of certain tendered instructions deprived him of his right to have the jury properly instructed on the burden of proof. However, the substance of those instructions was covered in another instruction given, and it was not necessary for the court to state the same proposition of law in different language. *Strom v. Lipschultz* (1972), 5 Ill. App. 3d 308, 313, 282 N.E.2d 257.

Finally, the owner argues that the following clause contained in the contract, which he drafted, made inspection of the work by an engineer a condition precedent to final payment on the contract:

"In conclusion, all work performed on this home at 42609 Crawford Rd., Antioch, Ill. 60002 by said contractor, Arthur A. Cencula, Sr. will be inspected & approved by expert engineer, Mr. Lowell Swenson, on a periodic basis. Work must meet all

reasonable standards of construction to the satisfaction of the expert engineer. Both contractor & owner agree to having Mr. Lowell Swenson, expert engineer, assigned to this project as arbitrator & mediator of any disputed differences regarding quality of construction and materials used. His decision will be binding & final on all differences between both parties. All fees to the above expert engineer will be born on the owner & will not be considered as part of the contract price of the house. All payouts will be made prior to getting approval of work completed by Mr. Swenson, expert engineer."

The owner argues that the trial court erred in disregarding the claimed requirement that the contractor prove the work was done to the satisfaction of the expert engineer.

This court ruled in the first appeal of this case that the owner had waived his right to arbitration by actively participating in the legal action and failing to timely assert his rights to arbitration under the contract. (*Cencula v. Keller* (1987), 152 Ill. App. 3d 754, 757-58, 504 N.E.2d 997.) After remand, the trial court ruled that the quoted language did not, as the owner contends, create a condition precedent requiring that unless Mr. Swenson approve the construction, there would be no payment due and owing under the contract. In trial, the court determined that the alleged condition precedent need not be included as part of either the issue or the burden instruction.

A condition precedent is one which must be performed either before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. (*John J. Calnan Co. v. Talsma Builders, Inc.* (1979), 77 Ill. App. 3d 221, 225, 395 N.E.2d 1076.) Where a party claims that his own ambiguous language constitutes a condition precedent to his performance, he is not entitled to such a favorable construction unless it is established that the parties intended to create such a condition at the time of contracting. *South Division Credit Union v. Deluxe Motors, Inc.* (1976), 42 Ill. App. 3d 219, 222, 355 N.E.2d 715.

The language to which the owner refers does not establish the condition precedent urged by him, as the payouts on the contract and the inspection by the expert are clearly independent of one another, and neither is a condition precedent to the other. As the clause relied upon by the owner states, "all payments will be made *prior* to getting approval of work completed by Mr. Swenson, expert engineer." (Emphasis added.)

The trial court did indicate at one point that payouts under

the contract were conditioned upon an inspection by the expert engineer. Although this interpretation was inaccurate, it had no bearing on the outcome of this case. The reasons given by a trial court for an order, or the findings upon which it is based, are not material if the order is correct. (*Board of Managers of Dominion Plaza One Condominium Association No. 1-A v. Chase Manhattan Bank, N.A.* (1983), 116 Ill. App. 3d 690, 694, 452 N.E.2d 382.) The trial court's subsequent decision to refuse instructions pertaining to inspection by the expert engineer was correct.

Accordingly, the judgment of the circuit court is affirmed in the sum of $72,769, as reduced by deletion of the $20,790 in interest improperly included in the original judgment.

Affirmed as modified.

LINDBERG and REINHARD, JJ., concur.