**HELLER INTERNATIONAL CORPORATION, a Delaware corporation, Plaintiff,**

v.

Alec SHARP (a United Kingdom subject, as Lead Underwriter of and for all the Subscribing Syndicates of Underwriters of Lloyd's London); Guardian Royal Exchange Assurance Company, Limited, a United Kingdom Corporation; Assicurazioni Generali, an Italian corporation, Bellefonte Insurance Company, a United Kingdom corporation, Sphere Insurance Company, Limited, a United Kingdom corporation; and Drake Insurance Company, Limited, a United Kingdom corporation, Defendants.

No. 85 C 3381.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1993.

Kimball Richard Anderson, Dan K. Webb, Julie Anne Bauer, and Lawrence R. Desideri, Winston & Strawn, Chicago, IL, for plaintiff.

Edward P. McNeela, McNeela & Griffin, Ltd., Chicago, IL, for defendant Alec Sharp.

Michael A. Pope, Stanley V. Figura, and Mark A. Brand, Pope & John, Ltd., Chicago, IL, for all other defendants.

## *MEMORANDUM OPINION AND ORDER*

MAROVICH, District Judge.

Plaintiff, Heller International Corporation ("Heller") brings this action for breach of contract in its Fifth Amended Complaint against Alec Sharp, lead underwriter of a syndicate of underwriters at Lloyd's of London, Guardian Royal Exchange Assurance Company, Ltd., Assicurazioni Generali, Bellefonte Insurance Company, Sphere Insurance Company, Ltd., and Drake Insurance Company, Ltd. ("Defendants"). Heller alleges that Defendants refused to indemnify it under a fidelity bond issued by Defendants for losses sustained due to an employee's dishonest and fraudulent acts. As a result of the Defendants' refusal to honor the bond, Heller maintains that it was forced to borrow $10 million dollars and has now paid in excess of $10 million in interest. Defendants now move this Court under Fed.R.Civ.P. 12(b)(6) to dismiss Heller's claim for recovery of consequential damages. In addition, Defendants also seek summary judgment in their favor on Heller's alternate claim for recovery of prejudgment interest. For the reasons set forth below, the Court denies Defendants' motion to dismiss and denies Defendants' motion for summary judgment as moot.

### *BACKGROUND* [1]

Heller, a commercial lender, is the corporate successor of Walter E. Heller In-

---

1. When considering a motion to dismiss, the court assumes the truth of all well-pled factual

ternational Corporation. During the time period in question, Walter E. Heller Western Inc. ("Heller Western") was a wholly-owned subsidiary of Walter E. Heller International Corporation, headquartered in Los Angeles, California. Heller Western maintained a branch office in Phoenix, Arizona. Irving Chudy, a Vice President of Heller Western, managed the Phoenix office from December 7, 1971 until October 29, 1981.

Heller was assured under a periodically-renewed "Comprehensive Commercial Bond" ("bond") throughout most of the period relevant to this action. Under this bond, Defendants received premiums from and assumed several liability to Heller in the following manner: Underwriters of Lloyd's, London, 85.29%; Assicurazioni Generali, 6.54%; Guardian Royal Exchange Assurance Company Ltd., 3.27%; and Sphere Insurance Company, Ltd., Drake Insurance Company, Ltd., and Sphere Insurance Company, Ltd. "B" 1.63% (shared among themselves 45%, 45%, and 10% respectively). Heller paid all premiums and complied with the conditions of the bond.

Under a section of the bond entitled "Fidelity Coverage," the bond provided Heller with indemnification up to $10 million for:

> Loss of Money, Securities and other property which the Insured shall sustain resulting from one or more fraudulent or dishonest acts committed by an Employee, acting alone or in collusion with others.

> Dishonest or fraudulent acts as used in this Insuring agreement shall mean only dishonest or fraudulent acts committed by such an employee with the manifest intent:

> (a) to cause the Insured to sustain such loss; and

> (b) to obtain financial benefit for the employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pension or other employee benefits earned in the normal course of employment.

Payment was due within 30 days of Heller's submission of a Proof of Loss for sustained losses falling within the terms of the bond.

On December 21, 1982, Heller delivered a Proof of Loss to Alfred J. Morgan ("Morgan"), the Defendants' agent, setting forth losses in excess of $15 million resulting from the fraudulent activities of one of its employees, Irving Chudy. Chudy had been responsible for making, monitoring, and funding various loans from the Phoenix office.

Defendants refused to indemnify this claim. As a result, Heller claims it was forced to borrow an additional $10 million from January 20, 1983 to the present. Heller alleges that the interest costs on this loan exceed $10 million and seeks the original $10 million on the bond and additional consequential damages in the amount of the interest cost of these borrowings. In the alternative, Heller seeks the $10 million on the bond plus prejudgment interest from January 20, 1983 to the date of any judgment. Pursuant to the Illinois Interest Act, 815 ILCS 205/2 (1993), this prejudgment interest would be calculated at an annual rate of five percent.

As noted above, between December 7, 1971 and October 29, 1981, Chudy managed Heller Western's Phoenix office. Beginning about February 21, 1978 and continuing through October 29, 1981, he engaged in a series of transactions resulting in the misappropriation of Heller funds for the benefit of himself and others. Chudy misappropriated funds, amounting to over $15 million, by giving false oral and written reports and establishing, manipulating and funding nonexistent loans.

The first series of transactions resulted in an alleged loss to Heller of approximately $2 million. Between February 22, 1978 and September 14, 1981, Chudy falsely approved loans to a number of Heller borrowers' accounts, including Brunswick Construction, Arizona Furniture, Sandia Steel, and Con

allegations and makes all possible reasonable inferences in favor of the plaintiff. *See Janowsky v. United States,* 913 F.2d 393, 395 (7th Cir. 1990). Thus, for purposes of Defendants' motion to dismiss, we take the following facts from the Fifth Amended Complaint. In large part this background will also apply to our resolution of the Defendants' motion for summary judgment. Nonetheless, on that motion we will also include as necessary our review of facts from the entire record, not simply the Complaint.

Lee. Subsequently, the proceeds of these loans were transferred from the borrowers' accounts into a variety of banking accounts in which Chudy had interest. Heller claims a sustained loss of $1,985,000 as a result of Chudy's actions. Because the first two transactions in this series occurred before the effective date of coverage, Heller claimed indemnification for losses of $1,885,000 within the terms of the bond.

In a second series of similar transactions between February 14, 1979 and August 7, 1979, Chudy allegedly obtained $38,253.39 for the benefit of Brunswick Construction Company, a Heller borrower. Heller claims a sustained loss for this entire amount and seeks indemnification under the terms of the bond.

In a third series of transactions, Heller claimed Chudy fraudulently obtained funds amounting to $13,750,490.09 for the benefit of himself and a Heller customer, Hirsh–Evans, Inc. ("Hirsh–Evans"). This complicated series of events began in late 1980 when Sidney Legg ("Legg"), Heller Western's Los Angeles-based President, directed Chudy to maintain the balance of Hirsh–Evans' loans at or below its then current level of $9.5 million. Chudy falsely assured Legg that Hirsh–Evans was about to obtain $4 million from other sources that it would apply to its outstanding debt to Heller. In order to reduce this debt, Chudy advanced $2 million of Heller monies to Condo Corporation, a borrower affiliated with a dormant Heller account. He subsequently caused these funds to be transferred or "washed" through a bank and returned to Heller as a payment to the Hirsh–Evans account to "reduce" its debt. Chudy then created a second fictitious account for Pioneer Corporation and reactivated a third dormant account, American Cable Television, to transfer additional Heller monies to Hirsh–Evans and further "reduce" the loan. Between January 23, 1981 and October 29, 1981, Chudy allegedly diverted Heller funds in excess of $13 million for the benefit of Hirsh Evans and himself.

In October of 1981, Legg ordered a field examination of the Hirsh–Evans books. At this time, discrepancies in the books revealed Chudy's activities. Chudy subsequently resigned on October 29, 1981, stripping his office of relevant files and records. He was indicted for his activities and agreed to plead guilty to fraud. Sentenced to six years imprisonment, Chudy fled Arizona prior to incarceration. In July 1989, Chudy was arrested in Milwaukee, Wisconsin. He then pled guilty to unlawful failure to appear and was sentenced to an additional year in prison.

Heller gave Defendants written notice of Chudy's fraud on November 10, 1981. Morgan, on Defendants' behalf, gave Heller until December 31, 1982 to file its Proof of Loss. Heller submitted its Proof of Loss on December 21, 1982, claiming sustained Chudy-related losses in excess of $15 million.

Defendants failed to indemnify Heller for its losses. Heller brought suit for breach of contract and several other counts in the District Court for the Northern District of Illinois. In a jury trial, Heller was awarded a total of $77,090.00 on Count I of the Fourth Amended Complaint. The jury found for Defendants on Counts II, V, and VI involving breach of the implied covenant of good faith and fair dealing and unjust enrichment. The Court found for Defendants on Counts III and IV which involved alternate theories for recovery of prejudgment interest. Both Heller and Defendants unsuccessfully made motions for judgment notwithstanding the verdict and Heller sought a new trial. The district court denied the motions. Both Heller and Defendants subsequently appealed to the United States Court of Appeals for the Seventh Circuit asserting, among other things, errors in jury instructions. The Seventh Circuit vacated the judgment and remanded for a new trial. 974 F.2d 850.

## DISCUSSION

### Defendants' Motion to Dismiss— Consequential Damages

██ Because of their critical importance to resolution of the issue presented by Defendants' motion, we will elaborate on the traditional standards for review of a motion to dismiss. In reviewing Defendants' Fed. R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim, the court naturally accepts as true all factual allegations and the reason-

able inferences that can be drawn from them. *Trevino v. Union Pacific R.R. Co.*, 916 F.2d 1230, 1234 (7th Cir.1990); *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988). Ambiguities in the complaint are resolved in favor of plaintiff. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992). We also presume "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

▆ A court should not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ross v. Creighton University*, 957 F.2d 410, 413 (7th Cir.1992); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). Plaintiffs, however, must outline within the complaint direct or inferential allegations encompassing the requisite elements of the particular claim. *See Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). To survive a motion to dismiss, plaintiffs need not identify a legal theory, nor is an incorrect legal theory fatal. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077 (7th Cir.1992).

▆ We remind the reader that the function of a complaint under the federal rules is to notify the defendants of the plaintiff's claim rather than to detail evidence which, if true, would show that plaintiff should prevail. *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir.1985). In addition, except in those circumstances delineated in Rule 9(b), fact-pleading is not required in federal court. *Banker's Life*, 959 F.2d at 79. In this way, federal pleadings may differ from state pleadings such as those filed in the state courts of Illinois where greater specificity or fact-pleading is required. *Cf. Clark v. Standard Life & Accident Ins. Co.*, 68 Ill.App.3d 977, 25 Ill.Dec. 416, 424, 386 N.E.2d 890, 898 (1979). The dispute between the parties over the sought after recovery of interest costs

centers around our application of these principles. We now undertake that task.

Defendants seek dismissal of Heller's claim for consequential damages primarily because Heller has not alleged the consequential damages sought were reasonably foreseeable, within the contemplation of the parties at the time the contract was executed, and arose from special circumstances communicated and known by the parties at that time. *See Clark v. Standard Life & Accident Ins. Co.*, 68 Ill.App.3d 977, 25 Ill.Dec. 416, 424, 386 N.E.2d 890, 898 (1979) (applying Illinois law and pleading standards). Plaintiff Heller, in response, argues that the rules governing pleadings in federal court do not require the heightened level of pleading demanded by Defendants. Rather, Heller argues that the Complaint must and does simply state a claim for breach of contract and a demand for relief sufficient to survive a motion to dismiss.

▆ Illinois courts hold that an enforceable contract is one where the essential terms are definite and certain. *Midland Hotel v. Ruben H. Donnelley*, 118 Ill.2d 306, 113 Ill.Dec. 252, 515 N.E.2d 61, 65 (1987). When a breach of these essential terms occurs, damages should serve to put the aggrieved party in the position he would be in if the contract had been performed. *Castricone v. Michaud*, 223 Ill.App.3d 138, 164 Ill.Dec. 862, 583 N.E.2d 1184, 1185 (1991); *Kalal v. Goldblatt Bros, Inc.*, 53 Ill.App.3d 109, 11 Ill.Dec. 120, 122, 368 N.E.2d 671, 673 (1977). In Illinois, a plaintiff is entitled to all damages which naturally and generally result from the breach. *Midland Hotel*, 113 Ill.Dec. at 258, 515 N.E.2d at 67. Additionally, plaintiffs are entitled to recover damages that are the "consequence of special or unusual circumstances." *Id.* To obtain such a recovery, however, plaintiffs must show that these damages "were within the reasonable contemplation of the parties." *Id.* No such showing is required to recover the natural and general damages flowing from a breach.

▆ These general principles of contract law apply equally well in the insurance contract context. *Mohr v. Dix Mutual County Fire Ins. Co.*, 143 Ill.2d 989, 97 Ill.

Dec. 831, 836, 493 N.E.2d 638, 643 (1986); *Clark*, 25 Ill.Dec. at 424, 386 N.E.2d at 898. In many instances, the measure of damages is governed by the contractual policy amount. *Clark*, 25 Ill.Dec. at 424, 386 N.E.2d at 898. That rule is not an absolute. As noted above, Illinois law does allow recovery of consequential damages "where they were reasonably foreseeable, were within the contemplation of the parties at the time the contract was entered, or arose out of special circumstances known to the parties." *Mohr*, 97 Ill.Dec. at 836, 493 N.E.2d at 643. We also cannot ignore the possibility that particular damages may be the natural result of a breach in one case and consequential or special damages in another. *Compare Midland Hotel*, 113 Ill.Dec. at 258, 515 N.E.2d at 67 (finding lost profits direct and foreseeable result of breach, thus no need to instruct jury on "reasonable contemplation" of parties) *with Mohr*, 97 Ill.Dec. at 837, 493 N.E.2d at 644 (holding lost profits on a collateral transaction must be within contemplation of the parties to be recoverable).

 Although the Fifth Amended Complaint in its prayer for relief labels the interest costs expended by Heller as consequential damages, the body of the Complaint does not. As we noted above, an incorrect theory or label is not fatal. Thus, we will consider two possibilities in this case. First, we consider whether Heller has stated or could state a breach of contract claim[2] that includes recovery of the alleged interest costs as a natural and general result of the Defendants' alleged breach. Second, we will discuss whether Heller has stated or could state a claim that includes recovery of the alleged interest costs as consequential damages. We emphasize that federal pleading standards, not those of Illinois, govern our discussion.

 Defendants contend that Heller's claim for consequential damages, as written, is deficient. They argue Heller must specifically plead that the consequential damages sought were reasonably foreseeable, within the contemplation of the parties at the time

the contract was executed and arose from the circumstances communicated and known by the parties. Defendants cite various cases to support their argument but we do not find them persuasive.

Defendants rely heavily on *Clark v. Standard Life & Ins. Co.*, 68 Ill.App.3d 977, 25 Ill.Dec. 416, 386 N.E.2d 890 (1979). In *Clark*, the plaintiff had obtained a disability insurance policy in connection with the purchase of a home and a mortgage. At some point, plaintiff allegedly became disabled, but the insurer failed to pay under the policy. Plaintiff fell behind in his mortgage payments and alleged that the insurer knew he would fall behind in his payments without his benefits. The Illinois Appellate Court found that the plaintiff had not specifically pled that the loss of his home was a foreseeable consequence of the insurer's contract breach or that his exclusive reliance on the policy benefits to pay his mortgage was within the contemplation of the parties, as required by Illinois law. Under these circumstances, the court held that plaintiff failed to make a cognizable claim for consequential damages and dismissal was proper. *Clark*, 25 Ill.Dec. at 424, 386 N.E.2d at 898.

If this Court were an Illinois court, perhaps the result in *Clark* would be the same here. It is entirely consistent with Illinois pleading standards to require allegations that damages were foreseeable or within the contemplation of parties, especially when relating to a collateral transaction such as found in *Clark*. We are not convinced by this authority, however, that the federal pleading standards outlined above require such allegations. Nor are we convinced that the interest costs allegedly incurred here are actually collateral to the fidelity bond contract or its breach.

Defendants' reliance on both *A. Kush & Assocs. Ltd. v. American States Ins. Co.*, 927 F.2d 929, 937–38 (7th Cir.1991) and *Cencula v. Keller*, 180 Ill.App.3d 645, 129 Ill.Dec. 409, 411–12, 536 N.E.2d 93, 95–96 (1989) is likewise misplaced. First, Defendants contend

---

2. Defendants continually refer to "a claim for consequential damages" as if it has an independent existence separate and apart from Heller's breach of contract action when in reality it is but

a part, albeit a significant part, of the breach of contract action. This Court interprets the pleadings as a whole to determine whether Heller has stated a claim.

that *Kush* stands for the proposition that "interest [is] not recoverable as consequential damages where not specified in [an] insurance contract." (Defs.Mem. in Supp. at 2). We find Defendants' view of *Kush* unsupported and inaccurate.

In *Kush,* the insured sought recovery of lost interest it would have *earned* on receivables held by a third party, AMEX. When AMEX learned that the insured's insurance policy might not cover a copyright infringement suit involving a commercial transaction between the insured and AMEX, it withheld the receivables. The insured argued that its lost interest was recoverable as part of its action for breach of the insurer's duty to defend. The district court held that this self-help measure was not a foreseeable consequence of any breach.[3] 927 F.2d at 937. The Seventh Circuit found that the insured had presented no evidence *at trial* that the lost interest "naturally arose" from the insurer's alleged breach of a duty to defend. 927 F.2d at 938. Nor did the insured present any evidence that such payment of lost interest was within the contemplation of the parties when the insurance contract was entered. *Id.* Finally, the court noted in a statement that perhaps gave rise to Defendants' hyperbole that "nothing in the insurance contract would indicate such foreseeability." *Id.*

The Seventh Circuit's holdings regarding an insured's failure to *prove* its entitlement to recover the lost interest costs do not indicate that Heller cannot or has not stated such a claim. Defendants make the mistake of ignoring the critical difference that procedural posture makes. A motion to dismiss is directed at the sufficiency of the Complaint, not the sufficiency of the proof which is a question reserved for the trier of fact.

In *Cencula,* the Illinois Appellate Court found that a contractor had failed to *prove*

that it was entitled to recover the interest it had paid on a loan used to pay subcontractors in an action for breach of a construction contract. 129 Ill.Dec. at 411–12, 536 N.E.2d at 95–96. The court reasoned that "[s]uch interest costs to the contractor do not arise naturally ... as a result of a breach of contract." *Id.* Instead, it found such expenses part of the usual costs of performing a construction contract. *Id.* at 412, 536 N.E.2d at 96. In addition, the court found no evidence that the parties contemplated such a recovery by the contractor. *Id.* Once again, Defendants mistakenly rely on a case involving a failure of proof to argue that Heller has failed in pleading.

Though *Cencula* indicates some doubt that interest on loans can be recovered for a breach of contract, the circumstances here differ and may lead to such a recovery.[4] It is well established that dismissal is improper if any set of facts exists under which Heller could recover the interest costs as part of its breach of contract action. *See Ross v. Creighton University,* 957 F.2d 410, 413 (7th Cir.1992); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). We emphasize that the Complaint need not detail the evidence to support such a recovery, *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985); indeed we presume general allegations encompass the specific facts necessary to support a claim. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). With this in mind, we need not strain to find such a set of facts.

For example, there is no dispute that Heller and the Defendants entered into an agreement which included the fidelity bond coverage as set out above. In simple terms, Heller, a commercial lender, whose stock in trade is money, sought to protect itself

---

3. As the Seventh Circuit noted, the district court had found no breach and the insured had waived its argument by failing to raise it before the district court. Thus, the issue of damages was not squarely before the court. Nonetheless, the Seventh Circuit addressed the issue "to appease" the insured. 927 F.2d at 937.

4. For an excellent discussion of the issues surrounding recovery of consequential damages beyond insurance policy limits, see *Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.,* 590 N.E.2d 1085 (Ind.Ct.App.1992); *Burleson v. Illinois Farmers Ins. Co.,* 725 F.Supp. 1489 (S.D.Ind.1989).

against the loss of that money due to an employee's fraudulent or dishonest acts. Defendants agreed to provide coverage for the specified acts up to $10 million per occurrence. Under these circumstances, it is readily apparent to this Court that Heller could show that Defendants' failure to honor their obligations naturally and foreseeably might cause Heller to seek another source of funds to replace those misappropriated by an employee. One does not obtain the use of such funds for free, and interest costs are an easily foreseeable result of the borrowing of funds. Under these facts which Defendants obviously can dispute, no proof and certainly no allegation regarding the contemplation of the parties is necessary because the interest costs would naturally flow from the breach of the insurance contract.

Because at this time the Fifth Amended Complaint appears to characterize the interest costs as consequential damages, we address this issue as well. Given the discussion above, it should not be a surprise that we believe a set of facts exists under which Heller could show the need to obtain loans in the event of a breach was within the objective contemplation of the parties. It does not appear objectively unreasonable that in the context of a fidelity bond designed to replace money lost through an employee's misconduct that the need for an alternate source of funds would be within the reasonable contemplation of the parties. Indeed, a basic reason for obtaining fidelity bond coverage is to provide a ready source of replacement funds when a covered loss occurs and to avoid the uncertainty of obtaining loans with the attendant interest costs after the loss is discovered.

Defendants attempt to characterize the recovery of interest as a bid to recover lost profits, a recovery allegedly forbidden by the contract. Defendants argue that Heller seeks the lost interest income that it could have obtained through legitimate loans of the funds allegedly diverted by Chudy. We simply do not agree with this characterization. Heller seeks recovery of interest charges it *incurred*, not interest charges it might have *earned* as profit on loans. The difference is clear to this Court, even if not to the Defendants.[5]

In summary, we find that the Complaint adequately alleges the existence of the insurance contract, a covered loss, a breach of that agreement due to a failure to pay Heller's claims, and damages resulting from that breach. Specifically, the Complaint claims that Defendants' failure to pay on the bond "forced" Heller to borrow $10 million and incur over $10 million in interest costs. Those damages are currently characterized as consequential damages in the prayer for relief. The Complaint adequately apprises Defendants of the nature of the claim and we clearly cannot find as a matter of law that no set of facts exist which would allow Heller to recover the interest charges it has incurred as part of its damages for the Defendants' alleged breach of contract. The Court denies Defendants' motion to dismiss.

---

5. We find no merit to Defendants' suggestion that we should dismiss the claim because of Heller's failure to *explain* why the alleged consequential damages were reasonably foreseeable or within the parties' contemplation. Heller is not required to make such an explanation in response to a motion to dismiss. If Defendants' wanted to pin Heller down and force it to go beyond the allegations of its Complaint, then a proper approach would have been to file a motion for summary judgment. *See, e.g., Early v. Banker's Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992). We add that this would have been a significantly more efficient use of everyone's time.

Unlike Defendants, we also are undisturbed by Heller's attempt to recharacterize its request for consequential damages as a claim for actual damages. While the prayer for relief does label the interest costs as consequential damages, labels are not determinative. We interpret Heller's submissions as an attempt to show that under some circumstances interest costs are properly awarded as damages in breach of contract actions. Indeed, given our discussion above, Heller may wish to amend its prayer for relief to attempt to seek the damages as the natural result of Defendants' alleged breach. We find the allegation within the Complaint that Defendants' alleged breach forced Heller to borrow funds and incur interest charges sufficient to encompass this possibility. If Heller wishes to amend its prayer for relief, it should file an Amended Complaint within two weeks of this decision.

*Defendants' Motion for Summary Judgment—Prejudgment Interest*

Plaintiff Heller alternately seeks recovery of prejudgment interest from January 20, 1983 to the date of any judgment. Pursuant to the Illinois Interest Act, 815 ILCS 205/2 (1993), this prejudgment interest would be calculated at an annual rate of five percent. Defendants contend that Heller's claims were not liquidated and subject to easy and exact computation on January 20, 1983. Heller argues that Defendants have waived this challenge because they failed to appeal several determinations adverse to Defendants on this issue. In addition, Heller contends the amount due on the bond is ascertainable and subject to calculation.

 In order for a party to prevail on a summary judgment motion, "the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any [must] show that there is no "genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant moving for summary judgment must show, based on the record, an absence of evidence to support the plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A party opposing summary judgment cannot rest on the pleadings and must affirmatively set forth facts that show that there is a genuine issue of fact." *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 687 (7th Cir. 1991). Although the evidence and all reasonable inferences from the record are drawn in the non-movant's favor, *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991), the non-movant must cast more than "some metaphysical doubt" as to the material facts. *LaScola v. US Sprint Communications,* 946 F.2d 559, 563 (7th Cir.1991) (citations omitted). As a practical matter, the test is "whether the non-movant has a fighting chance at trial." *Shager v. Upjohn Co.,* 913 F.2d 398, 403 (7th Cir.1990).

 We first address the issue of waiver. Heller argues that Defendants' failure to appeal the district court's rulings against them

on four motions and on a motion for directed verdict at trial precludes them from raising challenges to Heller's attempt to recover prejudgment interest at this time. Defendants respond that they had no reason to appeal an issue on which the Court entered judgment in its favor. Despite some confusing language in both the Seventh Circuit and district court opinions that appears to indicate the jury decided the prejudgment interest issue in Count IV of the Fourth Amended Complaint,[6] the judgment order does indicate that the Court, not the jury, decided the issue in favor of Defendants. Though the parties have not seen fit to address the issue, the Court is compelled to consider whether or not the issue of prejudgment interest is foreclosed by the prior finding of the district court in Defendants' favor.

At first glance, one might think that the Seventh Circuit's opinion answers this question in Heller's favor. The opinion states that "[w]e grant the plaintiff's appeal on the faulty jury instructions, and vacate the judgment, and remand for a new trial consistent with this opinion. . . ." 974 F.2d at 863. Nowhere in the opinion, however, does it appear that Heller appealed the decision of the district court for Defendants on Counts III and IV of the Fourth Amended Complaint, the counts dealing with prejudgment interest. Instead, the primary issues raised by the parties before the Seventh Circuit concerned the jury instructions regarding "manifest intent", estoppel and waiver of the two year limitations period for suit on the bond. Thus, the Seventh Circuit's opinion did not address, nor did the parties challenge, the district court's decision on prejudgment interest.

 We, therefore, are squarely presented with a situation calling for an examination of the law of the case doctrine. In other words, having lost once does Heller get a second bite at the apple? The law of the case doctrine is a "rule of practice" based on the recognition that "once an issue is litigated and decided no further litigation should

---

**6.** For example, in its statement of the case, the Seventh Circuit makes the following comments. "The jury returned a verdict in favor of Heller on count one for $77,090, which represented an award for the Brunswick losses only, less the bond's deductible and the amounts recovered from Chudy. *The jury ruled for defendants on the remaining counts.*" 974 F.2d at 855.

occur on that issue." *Estate of Stoller v. Ford Motor Co.*, 784 F.Supp. 506, 511 (N.D.Ill.1992); *see also Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). We remind the reader that the parties have litigated the issue of prejudgment interest and that issue was decided in Defendants' favor by Judge Parsons.

The Seventh Circuit has recently addressed the application of the doctrine in these circumstances and we find its comments particularly applicable to this case. "If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court." *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993); *see also Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987). In *Williams*, the Seventh Circuit also considered the impact of a subsequent change of judges on the law of the case. The court noted:

> [L]itigants have a right to expect that a change in judges will not mean going back to square one. The second [in this case, the fourth] judge may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so even though the time for reconsideration has not expired, merely because he has a different view of the law of the facts from the first judge. In this situation, the doctrine of the law of the case has bite.

*Williams*, 1 F.3d at 503 (citations omitted).

With these principles in mind, we see no new evidence, nor do we see any compelling reason why this Court should revisit the issue of prejudgment interest which was already tried and decided and left untouched by the parties and the Seventh Circuit on appeal. Absent any unusual circumstances which do not appear to exist in this case, this Court is bound to follow the prior decision of Judge Parsons. Because we follow this decision in Defendants' favor, we will not grant summary judgment which would imply that we revisited the issue of prejudgment interest. Instead, we will strike the request for prejudgment interest found in paragraph (c) of Heller's prayer for relief.

What type of case are we now left with after today's decision? Our decision today allows Heller to proceed with its attempt to recover its interest costs either as the natural result of Defendants' breach or as consequential damages. Prejudgment interest is no longer an issue. As the Seventh Circuit directed, we need not reexamine the issue of whether Defendants waived Condition 15, the two year limitation period for bringing a suit on the bond. The jury said they did and the Seventh Circuit affirmed. If and when this case returns to trial, the jury will receive instructions on "manifest intent" in keeping with the Seventh Circuit's opinion. The issue of Chudy's intent was central to the first trial and we assume it will remain central in the second. In any event, the jury will get to decide whether and to what extent Chudy's conduct caused losses within the meaning of the bond, whether Defendants breached their obligations, and the extent of the damages resulting from any breach.

### CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion to dismiss and denies Defendants' motion for summary judgment as moot. The Court strikes Plaintiff's request for prejudgment interest found in paragraph (c) of its prayer for relief in the Fifth Amended Complaint.